DISTRICT ATTORNEY FOR THE NORTHERN DISTRICT *vs.*
SUPERIOR COURT
(and a companion case[1]).

Suffolk.    January 3, 1961. — February 15, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Practice, Criminal,* Sentence.   *Constitutional Law,* Separation of powers.

Review of authorities dealing with revision of sentences in criminal cases.
  [121–126]
A reduction by the court of a sentence to imprisonment in a criminal case
  after the defendant has begun to serve the original sentence does not
  constitute an exercise of executive power by the court.   [126–127]
A sentence to imprisonment imposed in the Superior Court may, with the
  consent of the defendant, be revised by the trial judge in a manner
  favorable to the defendant during the same sitting of the court even
  though the defendant has begun to serve the original sentence.   [127–
  128]

Two PETITIONS for writs of mandamus filed in the Supreme Judicial Court for the county of Suffolk on May 23, 1960.

The cases were reserved and reported by *Cutter, J.,* without decision.

*Monroe L. Inker, (Joseph G. Crane & John J. Droney,* District Attorney, with him,) for the petitioner.

*Edward B. Hanify,* Special Assistant Attorney General, *(Donald R. Grant* with him,) for the respondents.

*M. Arthur Gordon, Ellis F. Brown, & Julius Thannhauser,* for Roderick, by leave of court submitted a brief as amici curiae.

*Louis L. Bobrick,* for Sileno, by leave of court submitted a brief as amicus curiae.

CUTTER, J.   The district attorney seeks, by two petitions

---

[1] The principal case relates to one Frank J. Roderick. The companion case relates to one Louis Sileno. Except in minor respects mentioned in the opinion, the facts and applicable principles in the two cases are the same.

for writs of mandamus, originally heard by a single justice of this court, to require the trial judge and the justices of the Superior Court (the justices) to take all necessary steps to effect the return to the house of correction of one Roderick and one Sileno, each a defendant convicted in the Superior Court in the county of Middlesex for violation of the gaming laws. The single justice reserved each case without decision for the consideration of the full court upon the pleadings, a petition to intervene, and a stipulation of facts. The Attorney General (see G. L. c. 12, §§ 3, 10, 27; *Commonwealth* v. *Kozlowsky,* 238 Mass. 379, 385–391), by consenting to amendments of the petitions and by a stipulation, has agreed that the district attorney may represent the interests of the Commonwealth in these proceedings. The facts stated either are admitted by the pleadings or appear in records stipulated to be accurate. All actions complained of by the district attorney in his petitions took place at the May, 1960, sitting of the Superior Court in the county of Middlesex.

On May 9, 1960, Roderick was found guilty by verdict of a jury in the Superior Court of the crime of allowing premises to be used for registering bets and was sentenced to imprisonment for six months in the house of correction. He was taken upon mittimus to the East Cambridge jail and remained there until May 19, 1960, when he was returned (pursuant to a writ of habeas corpus issued by order of the trial judge who presided at his trial) to the session of the Superior Court at which he had been sentenced. Roderick's original sentence was thereupon revoked and a fine of $1,000 was imposed instead. The fine was paid. The district attorney objected to this action taken on May 19.

The proceedings in the Superior Court with respect to Sileno in relevant respects were the same as those with respect to Roderick, except that (a) Sileno was also convicted of the offence of permitting a lottery to be set up in a building, and each verdict finding him guilty was returned on May 5, 1960, (b) the revocation and modification of his sentence took place on May 18, 1960, and (c) his revised

sentence was for imprisonment for four months in the house of correction, which was suspended for three years for which period Sileno was placed on probation. There was then pending in the Superior Court a bill of exceptions presented by or in behalf of Sileno which, on May 18, 1960, Sileno waived in open court. No such bill of exceptions was pending on May 19 in behalf of Roderick, but it was stipulated that before, at, and after his trial Roderick had saved exceptions and that the time allowed for filing a bill of exceptions had not expired on May 19, 1960.

On May 23, 1960, the district attorney with respect to each criminal defendant filed a petition for a writ of mandamus, alleging that the trial judge ''did not have power or jurisdiction to vacate a sentence already imposed and executed,'' and later amended to allege that ''he appears in behalf of and as representative of the Commonwealth.'' The justices of the Superior Court have filed an answer.

Roderick and Sileno each seasonably filed a petition to intervene which was denied without prejudice to its renewal at a later date. Counsel for each of them was given permission to participate fully in the proceedings before the single justice as amicus curiae, with leave to file briefs there. Each of them has filed a brief as amicus curiae before the full court. See *MacBrayne* v. *City Council of Lowell,* 241 Mass. 380, 384. Cf. *Siegemund* v. *Building Commr. of Boston,* 259 Mass. 329, 335. Before the single justice, no evidence, apart from the facts stipulated, was offered by the parties or by the amici curiae.

The principal question for decision is whether the trial judge, after Roderick and Sileno had started to serve their respective sentences but prior to the end of the May, 1960, sitting, had jurisdiction or power to revoke, as he did, the original sentences and to impose different sentences. Certain relevant principles appear to be well settled. If no action had been taken under the original sentences, such as delivering Roderick and Sileno to the house of correction to commence their terms, the trial judge could have revised the sentences during the same sitting of the court. *Com-*

*monwealth* v. *Weymouth,* 2 Allen, 144, 146–147. At common law the sentences could not have been revised, in the manner adopted by the trial judge, after the end of the term or sitting. See *Commonwealth* v. *Foster,* 122 Mass. 317, 323; *Commonwealth* v. *Soderquest,* 183 Mass. 199, 200. See also *Commonwealth* v. *Hayes,* 170 Mass. 16, 17. Cf. *Commonwealth* v. *Murphy,* 174 Mass. 369, 373–374 (revision after appropriate appellate review), affd. sub nom. *Murphy* v. *Massachusetts,* 177 U. S. 155. At the present time sittings are to be regarded as the equivalent, for purposes of revision of sentences, of the terms of court abolished by St. 1897, c. 490, §§ 1, 2. See G. L. c. 212, § 14 (as amended through St. 1932, c. 144, § 1); § 14A. See also G. L. c. 213, §§ 4, 6 (as amended through St. 1932, c. 144, § 5); *Commonwealth* v. *O'Brien,* 175 Mass. 37, 40–41; *Fine* v. *Commonwealth,* 312 Mass. 252, 255.

The district attorney relies upon statements in Massachusetts cases which indicate that revision of a sentence may not take place, even during the same term or sitting, if the sentence has been executed in part. The respondents, however, submit that these statements do not reflect any real judicial determination of the point now before us, and that in each instance the language, relied upon by the district attorney, was wholly unnecessary to the decision of the particular case then before the court.

The rule at common law seems to have been that, during the same term of court, a court of general criminal jurisdiction could alter a sentence. The circumstance that the sentence may have been partly served does not appear to have been treated in the decisions as in any way material. See *Regina* v. *Fitzgerald,* 1 Salk. 401; *Inter Inhabitants of St. Andrew's Holborn & St. Clement Danes,* 2 Salk. 606, 607 (where "judgments . . . during the same term" are referred to as "in the breast of the judges" and where it was also said, per Holt, C.J., "The Court at the Old Bailey have altered and set aside their judgments ten times the same sessions . . . . The sessions as well as the term is but one day in law"); *The King* v. *Price,* 6 East, 323, 327–328. See

also *Rex* v. *Fletcher,* Russ. & Ry. 58, 60; *The King* v. *Justices of Leicestershire,* 1 M. & S. 442, 444.

The earliest Massachusetts case recognized the common law rule. See *Commonwealth* v. *Weymouth,* 2 Allen, 144, 145–146, dealing with an increase in a sentence from two years to three and a half years. The sentence was amended before the defendant (at p. 147) "was . . . taken or charged on the warrant . . . issued on the sentence as originally pronounced." Chief Justice Bigelow, in discussing the power of the trial court to revise the sentence, said, "The true test by which to determine whether the power can be executed is, to ascertain whether it will affect the legal rights of the parties. If it will not, then it is a legitimate exercise of judicial discretion, of which no one has a right to complain." The court then went on to consider whether the prisoner had been adversely affected by the change, and said that as the "sentence never went into operation" it was "in effect . . . as if it had never been passed. So long as it remained unexecuted, it was, in contemplation of law, in the breast of the court, and subject to revision and alteration. He was not injured or put in jeopardy by it any further than he would have been by a conclusion or judgment of the court as to the extent of his punishment, which had not been announced. Until something was done to carry the sentence into execution, by subjecting the prisoner to the warrant in the hands of the officer, no right or privilege to which he was entitled was taken away or invaded, by revoking the sentence first pronounced, and substituting in its stead the one under which he now stands charged."

Obviously the court in the *Weymouth* case was not directing its attention to a reduction in sentence during the same term of court with the consent of the prisoner. It had no occasion to do so. The case seems to rest upon the fact that, before execution of any part of the sentence, there was no more possibility of double jeopardy or of other unfairness to the prisoner than if the revised sentence had been imposed originally. Of course, where the sentence is

revised in favor of the prisoner, he is not likely to complain of double jeopardy. Cf. *Bozza* v. *United States*, 330 U. S. 160, 166–167. The language in the *Weymouth* case, however, has been referred to in later cases in a way which overlooks the precise facts with respect to which the language was used.

In *Commonwealth* v. *Foster*, 122 Mass. 317, a defendant had been found guilty on several counts and sentenced upon two of them. He was then imprisoned under the sentence. This court held that, at a subsequent term to which the case had not been continued, he could not be sentenced upon another count upon which he had not been sentenced previously. The first sentence upon two counts in effect was treated (at p. 323) as disposing of "the whole indictment, and operated as . . . [a] discontinuance of, the other count" in the absence of an order, "made at the term at which the judgment is rendered, continuing the case for further proceedings." The court (citing the *Weymouth* case) said, "The sentence might have been amended at the same term, and before any act had been done in execution thereof. . . . But after the defendant had been imprisoned under it, and the term had been adjourned without day, the court could not amend it, or set it aside and impose a new sentence instead." Here also the court was not directing its attention, and the words "after the defendant had been imprisoned" were not being applied, to a reduction of a sentence during the same term. In *Commonwealth* v. *Murphy*, 174 Mass. 369, 373 (sentence after reversal of original sentence upon writ of error held proper), affd. sub nom. *Murphy* v. *Massachusetts*, 177 U. S. 155, this court referred to the *Foster* case as one in which there was an "attempted correction of a sentence after the term has ended."

Language like that quoted from the *Foster* case may be found in later cases. In *Commonwealth* v. *O'Brien*, 175 Mass. 37, 38–40, this court held that the statutory power to stay sentence and thereafter "to deal with the sentence whenever the exceptions are overruled . . . impliedly in-

cludes the power to correct any illegality or error in a sentence, provided it then remains wholly unexecuted.'' The court also said, referring to the *Weymouth* and the *Foster* cases, that during the term ''the judge . . . could revise his action in regard to an unexecuted sentence, and change the judgment in any proper way.'' There also the court was not dealing with a reduction in sentence during the same term of court. A similar comment may be made about comparable language in *Commonwealth* v. *Soderquest,* 183 Mass. 199, 200 (holding that a new trial could not be granted ''after the expiration of the sitting . . . and a long time after . . . [the defendant] had entered upon the execution of his sentence''), and in *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 20 (where in holding that the Superior Court had no power to revoke a capital sentence, imposed under the then existing statutory practice after exceptions had been overruled in this court, it was said, ''an unexecuted sentence may be revised before the end of the sitting,'' citing the *Weymouth* case).

In *Fine* v. *Commonwealth,* 312 Mass. 252, execution of a two year sentence was stayed by the trial judge, who allowed a motion for a new trial. Thereafter the allowance of the motion was vacated and the motion was denied. The prior sentence was reimposed and the defendant was confined. In deciding that this course of action was not improper, the court reviewed (at pp. 255–257) earlier cases, as follows. ''It was one of the earliest doctrines of the common law that the record of a court might be changed or amended at any time during the same term of the court in which a judgment was rendered. This, however, was not the extent of the power of the court over its records, for upon due proof that . . . error had been made in . . . the record, amendments were allowed after the final entry of judgment and the adjournment of the court for the term [citing the *Weymouth* case]. . . . Sentences could be revised during the term at which they were imposed, if the sentence remained unexecuted, but not thereafter [citing the *O'Brien* case]. . . . [F]rom early times the impor-

tance of the fact that a sentence has not been executed in whole or in part has been recognized in cases where the power of the court to amend or set aside and impose a new sentence has been involved [citing the *Foster, O'Brien,* and *Soderquest* cases]. . . . Sentence is final judgment in a criminal case [see *Whitney* v. *Commonwealth,* 337 Mass. 722, 723], and that is the end of the case, apart from statutory provisions, so far as concerns the usual and ordinary control of the court. . . ." Here again, what was then before the court required no consideration of the problem now before us, which also was not passed upon in *Campbell* v. *Commonwealth,* 339 Mass. 695, 697–698. Cf. *Lewis* v. *Commonwealth,* 329 Mass. 445, 447–452.

We conclude from this review of the Massachusetts cases that this court has never before had occasion to consider whether a trial judge, with the consent of a criminal defendant, may reduce a sentence of imprisonment during the same term or sitting of the court, even though the defendant may have been confined for a few days. Each statement relied upon by the district attorney either was unnecessary to the decision of the then pending case, or, directly or indirectly, was based upon, and seems to have misapplied, language used in the *Weymouth* case, where the sole problem was whether a sentence could be increased during the same term of court before the defendant had started to serve his sentence.

It may be suggested that to allow revision of a sentence during the court sitting involves some judicial interference with executive functions. Execution of a sentence is, of course, an executive function. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 20. It does not necessarily follow, however, that judicial power over a case ceases once execution of a sentence begins. If power to mitigate the sentence continued at common law during the term, judicial power to mitigate sentence may exist as long as the sitting lasts.

The reasoning in *United States* v. *Benz,* 282 U. S. 304 (concurred in by two judges familiar with Massachusetts law, Mr. Justice Holmes and Mr. Justice Brandeis), amply

answers the suggestion that mitigation of the sentence during the same term of court involves judicial exercise of executive power. The *Benz* case squarely held that a United States District Court, after sentence of imprisonment in a criminal case, has power during the same term of court to amend the sentence by shortening the imprisonment, although the defendant has already begun to serve his sentence. At p. 311, the court said, "We find nothing in the suggestion that the action of the district court in reducing the punishment after the prisoner had served a part of the imprisonment originally imposed was a usurpation of the pardoning power of the executive. The judicial power and the executive power over sentences are readily distinguishable. To render judgment is a judicial function. To carry the judgment into effect is an executive function. To cut short a sentence by an act of clemency is an exercise of executive power which abridges the enforcement of the judgment, but does not alter it qua judgment. To reduce a sentence by amendment alters the terms of the judgment itself and is a judicial act as much as the imposition of the sentence in the first instance."

Since the abolition of terms of court in the Federal Courts as periods of limitation, Rule 35 of the Federal Rules of Criminal Procedure (1946), 327 U. S. 856, by permitting reduction of a sentence within sixty days after it has been imposed, has recognized that strong practical reasons support the principle of the *Benz* case. See note, 44 Harv. L. Rev. 967, 970, where it was said, "[W]here the original sentence should be altered in view of facts pertaining to the trial itself . . . a review of the judgment is a proper judicial function. It should then be immaterial whether . . . the prisoner has already been committed." It is hard to see any reason of policy[2] which should bar a

---

[2] The Legislature has seen no such objection of policy in comparable situations. It has expressly authorized adjustments of sentences: (a) under G. L. c. 278, § 29 (as amended through St. 1957, c. 302), revision of sentence may be made within sixty days of any sentence "imposed without trial after a plea of guilty or nolo contendere"; (b) under G. L. c. 278, § 28A (as amended through St. 1945, c. 255, § 1); § 28B (as amended through St. 1945, c. 255,

District Attorney for the Northern District *v.* Superior Court.

court, during the same sitting, from reducing a sentence of imprisonment, which in any event is to extend over a considerable period of time, merely because a defendant has served a part of his sentence. Occasions inevitably will occur where a conscientious judge, after reflection or upon receipt of new probation reports or other information, will feel that he has been too harsh or has failed to give due weight to mitigating factors which properly he should have taken into account. In such cases the interests of justice and sound judicial administration will be served by permitting the trial judge to reduce the sentence within a reasonable time. The period of the sitting has traditionally been regarded as a reasonable time.

We think that sound practical considerations support the principle of the directly applicable decision of the Supreme Court of the United States in the *Benz* case. See *Gobles* v. *Hayes,* 194 Ga. 297, 298–300; *Czaplinski* v. *Warden of Md. Penitentiary,* 196 Md. 654, 657; *Madison* v. *State,* 205 Md. 425, 431; *State* v. *Riffe,* 127 W. Va. 573, 578. See also *Commonwealth* v. *Kazee,* 252 S. W. 2d 20 (Ky.); *Bax* v. *Fletcher,* 261 S. W. 2d 662, 663–664 (Ky.). Cf. *State* v. *Blanchard,* 156 Maine, 30, 53; and the cases collected in 168 A. L. R. 706, 710–711. Since we have no binding Massachusetts precedent on the point dealt with in the *Benz* case, we follow that decision, which, as the Georgia court pointed out in the *Gobles* case, *supra* (at p. 300), "should serve to explain much of the conflict [of decision] as it existed in the past, if not also to induce greater harmony in the future."

The present cases involve a substantial question directly concerning the powers of the Superior Court and the administration of criminal justice in that court. Because of this, we have felt it appropriate to consider the merits of that question rather than first to consider whether the dis-

§ 2); § 28C (as amended through St. 1957, c. 777, § 36), in the case of a sentence to State prison, revision of sentence may be had in the Appellate Division of the Superior Court; and (c) under G. L. c. 278, § 25 (as amended through St. 1955, c. 131, § 12), sentences may be revised in the District Court where a person originally convicted in a District Court waives an appeal to the Superior Court.

trict attorney may by mandamus seek review in this court of matters relating to the sentencing procedures of the Superior Court. Our decision on the principal question makes it unnecessary for us to consider this and various other procedural questions.

The trial judge had inherent power to take the action complained of within the limits of a sound discretion. No basis has been shown for requiring by mandamus any action in the Superior Court with respect to Roderick or Sileno. Each of the petitions is to be dismissed.

*So ordered.*