STATE, Respondent, v. RUUD, Appellant.

*No. State 95. Argued February 7, 1969.—Decided March 4, 1969.*
(Also reported in 165 N. W. 2d 153.)

For the appellant there was a brief by *Jack McManus* and *Larry Haukom,* both of Madison, and oral argument by *Mr. McManus.*

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the

brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Burleigh Randolph,* district attorney of La Crosse county.

BEILFUSS, J.  Upon appeal the defendant makes three contentions:

(1) The incustodial statement of the defendant was not preceded by adequate warning of his constitutional right to have assistance of counsel.

(2) The prosecutor's remark in closing argument to the jury was prejudicial.

(3) Trial court's refusal to allow the defendant to be recalled to refute the testimony of his own witness was an abuse of discretion and prejudicial error.

On Monday morning, October 3, 1966, and again on Monday, October 10, 1966, crudely made "traps" or devices designed to catch and remove bank deposits were found in the night depository of the First National Bank of La Crosse.  The police were notified and agreed to provide surveillance over the weekend beginning Friday evening, October 14th.

Access to the depository is afforded by keys, which are issued to the bank's patrons desiring to make deposits during the hours when the bank is closed.  On a normal weekend between 50 to 100 deposits are made.  On the weekend of October 14th over $85,000 in cash and checks were deposited with the bank.

About 1:30 a. m. on October 15th, an automobile stopped and parked directly across the street from the bank.  The defendant, Larry Ruud, who had shoulder-length hair, unusual clothes, and a paper bag under his arm, stepped from the vehicle and walked to the depository.  He looked both ways, then opened the depository.

A police officer, who had just driven up, heard the depository door clang shut and saw the defendant drop a key and a trap.  The defendant attempted to walk away but the officer arrested him.  The police also arrested

Lewis Lapof who was sitting in the car across the street. A short fishline with a fishhook attached to it was discovered in the vehicle.

The defendant and Lapof were taken to the police station. The defendant was informed of his constitutional rights generally and signed the following statement of rights and waiver.

"Before we ask you any question, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this same right to the advice and presence of a lawyer even if you cannot afford to hire one. *We cannot ourselves furnish you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.* If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### "WAIVER

"I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me." (Emphasis added.)

The defendant attacks the italicized portion of the warning and argues that the warning did not inform the defendant that he was entitled to counsel during the interrogation.

A police officer and an agent of the Federal Bureau of Investigation questioned the defendant. The defendant first claimed that a friend, whose name he had forgotten, offered him $3.50 to put a trap in the night depository for the purpose of embarrassing the bank.

The officers also talked to Lapof who told them he had seen the defendant working on various "traps." The defendant then made a statement, exculpatory in nature, which was reduced to writing by the F. B. I. agent and signed by the defendant.

The statement was to the effect that the defendant was a third-year student at Wisconsin State University, La Crosse; that he took the depository key from his former employer, Henry's Hamburger Stand; that in September, 1966, he had made several "traps" and had succeeded in getting three of them into the depository; that his intention was not to steal money but to show the manufacturer of the depository that there were problems they were unaware of and that he had written a 500-word theme for a college English class about it; that if he had obtained any money with the trap he would have dropped it back into the depository or would have taken it to the bank and said, "Hey did you lose this?"; and that he wanted to prove to the safe company and friends that money could be obtained from a night depository.

At the trial it developed that the defendant had been but was not a student at Wisconsin State University, La Crosse. He was academically ineligible and was refused admission in September, 1966. He did, however, attend a few English classes in September. He had worked at Henry's Hamburger Stand for at least a few weeks prior to August 27, 1966, but had only worked there for a couple of hours on two separate days after that date. At no time after August 27th had the depository key been missing.

Prior to the commencement of the trial it was stipulated to by defense counsel, the defendant personally, and the state that both the statement and the signed waiver could be received into evidence.

*"Mr. Cole* [Defendant's Attorney] : We will not object to the admissibility of the confession.

*"The Court:* Then that confession should be marked as an exhibit to the end that your complete record is made.

"(Exhibits 1 and 2 marked for identification by the court reporter)

"*Mr. Stoltz* [Assistant District Attorney]: We have marked for the record, Exhibit 1 which consists of a three page handwritten statement, dated October 15, 1966, of Larry Brian Ruud, and signed by him, and witnessed by James McArtyle, Special Agent for the Federal Bureau of Investigation, and Roger Schmuck of the Detective Bureau of the La Crosse Police Department.

"*The Court:* Exhibit #1 has been exhibited to counsel for the defendant and likewise to the defendant.

"*Mr. Stoltz:* Yes, and a copy, thermofax or xerox copy of it has been furnished to defendant's counsel, and it is my understanding this will be stipulated to, as being entered into evidence at the trial?

"*Mr. Cole:* Yes.

"*The Court:* The statement by Mr. Ruud and Mr. Cole that they stipulate to this being received and not only that but a copy has been furnished to them and they have had an opportunity to read the paper in question?

"*Mr. Cole:* Correct.

"*Mr. Ruud:* Yes.

"*The Court:* Speak up.

"*Mr. Ruud:* Yes.

"*The Court:* You are asking Exhibit 1 be received?

"*Mr. Stoltz:* Right.

"*The Court:* It will be received."

In his opening statement defense counsel stated that the sole issue was the intent of the defendant and that defendant did not intend to steal but "was engaged in a research project." He specifically referred to the statement, and said: "His statements given to the police immediately after arrest at two in the morning, 2:30 in the morning, in every detail exactly are the same explanations that he will give in the course of this trial for his actions."

Defendant took the stand and testified in support of the statement.

In his closing argument defense counsel stated:

"Now, if as the District Attorney says that the defendant fabricated this statement I submit to you that he would have to have almost super human power under

these circumstances to come up with a statement which bears out in every detail with everything that he has said in the course of this trial, and all the other evidence that has come in from the other witnesses.

"...

"I urge you to read this statement and judge for yourselves if there are any material discrepancies there."

At no time throughout the trial was any objection made. Defendant argues that constitutional errors cannot be waived merely by a failure to object, citing *Holloway v. State* (1966), 32 Wis. 2d 559, 146 N. W. 2d 441. This case is not applicable here because the question was whether review of a claim of constitutional error could be had where it was not brought to the trial court's attention. Here, a motion was made to the trial court to have the statement and waiver of rights form identified as exhibits and received in evidence.

This case does not deal with a simple waiver of rights. It deals with a knowing election between alternative courses of action. Instead of making any attempt to attack the validity of the statement the defense, as a matter of strategy, chose to use it to support his theory of the case. The deliberate choice was made not only by counsel but by the defendant as well. Such election does, in effect, estop the defendant from claiming error. *See Eskra v. State* (1965), 29 Wis. 2d 212, 138 N. W. 2d 173, certiorari denied, 384 U. S. 922, 86 Sup. Ct. 1375, 16 L. Ed. 2d 442; *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753, certiorari denied, 384 U. S. 1017, 86 Sup. Ct. 1941, 16 L. Ed. 2d 1039; *State v. Strickland* (1965), 27 Wis. 2d 623, 135 N. W. 2d 295; *Henry v. Mississippi* (1965), 379 U. S. 443, 85 Sup. Ct. 564, 13 L. Ed. 2d 408.

Because we have concluded the admission of the statement was accomplished by the deliberate and strategic choice of the defendant, we need not reach the sufficiency of the warning of constitutional rights as required by *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct.

1602, 16 L. Ed. 2d 694. Suffice it to say, the warning appears to comply with the requirements of *Miranda*.[1]

In his motion for a new trial, and upon this appeal, the defendant contends that the prosecutor's reference, in his closing argument, to witnesses called by the defendant as "his hippie friends" was calculated to inflame and prejudice the jury and was therefore improper.

A one-sentence statement taken from the context of the prosecutor's closing argument to the jury is, "[h]e told Louie Lapof, just remember that, that is why he was doing it regardless of these witnesses, his hippie friends, what they say."

No objection was made at the trial nor was a motion for mistrial made at any time prior to the return of the verdict. In this posture the defendant is precluded from claiming prejudicial argument as a ground for a new trial.

In *State v. Christopherson* (1967), 36 Wis. 2d 574, 582, 583, 153 N. W. 2d 631, we stated:

"Defendant contends there were several prejudicial statements made by the prosecution during closing argument. It is argued it was error for the court to omit noting defendant's objections to these statements.

"It is not necessary to pursue this contention in view of this court's decision in *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. 2d 249, 256, 137 N. W. 2d 6, where it was held that failure to move for a mistrial before the jury returned its verdict constituted waiver of complaints of impropriety with respect to closing argument by the adverse party's counsel. Whether the objections, rulings thereon, or the closing arguments were recorded is of no consequence since defendant is foreclosed from raising alleged improper and prejudicial argument as grounds for reversal in view of her failure to move for a mistrial before the verdict was rendered."[2]

The state contends that it merely reflected the witnesses' actual appearances. Most of the witnesses were

---

[1] *See Reed v. State* (1968), 3 CrL 2519.

[2] *See also Price v. State* (1967), 37 Wis. 2d 117, 134, 154 N. W. 2d 222.

members of a musical group, and appeared in court in outlandish costumes, some decorated with graffiti,—for example, "God is a Teeny Bopper." The prosecutor's statement could be hardly more than anticlimatic.

We have read the entire argument of the prosecutor as it appears in the record. While we do not commend the use of such phrases we agree with the conclusion of the trial court that the argument was not prejudicial in the sense it was so unfair and inflammatory as to warrant a new trial.

The final contention of the defendant is that the trial court erroneously refused to allow the defendant to be recalled to testify after a witness called by the defendant testified that the depository key was not missing at any time after August 27th.

This appeal is only from the order denying the motion for a new trial and not from the judgment.

The standard of review upon appeal from an order denying a motion for a new trial is whether the trial court abused its discretion.

The defendant did not in any manner, by written motion, memorandum or argument, raise this question in his motion for a new trial. The trial court did not have an opportunity to exercise its discretion on this issue. It cannot be said the trial court abused its discretion when it had no opportunity to exercise it.

The merits of defendant's argument on the last issue are not reviewable.

Although defendant did object at the time of the trial, the objection was not renewed at the time of the motion for a new trial, the denial of which forms the basis of this appeal. The time for appeal of the original judgment has since passed.

The error claimed falls within the category of that which the trial court could have corrected by granting a new trial. In such a case the error of the court is not

reviewable as a matter of right on appeal from the judgment unless a motion is made for a new trial based on such error. *State v. Rodell* (1962), 17 Wis. 2d 451, 117 N. W. 2d 278. There is, in fact, nothing before the court to review on this issue.

*By the Court.*—Order affirmed.