**People of the State of Illinois, Plaintiff-Appellee,
Jonathan Townsend, Defendant-Appellant.**

Gen. No. 67–91.

Fifth District.

July 24, 1969.

Ralph T. Stenger, Bock & Stenger, of Belleville (Ralph T. Stenger, of counsel), for appellant.

Robert H. Rice, State's Attorney of St. Clair County, of Belleville, and William B. Starnes, Assistant State's Attorney, for appellee.

MORAN, J.

Defendant, Jonathan Townsend, appeals from a conviction for the crime of armed robbery, contending that the trial court committed reversible error in the admission of certain evidence.

On March 1, 1967, at about 8:15 a. m., a liquor store, known as Bob's Liquor Store, was held up in East St. Louis, Illinois, by two men who were armed with guns. The only other person in the store at the time was an employee by the name of Bobby Wilson.

Bobby Wilson testified that she was a barmaid and cook at Bob's Liquor Store in East St. Louis, had worked there for a period of seven years and that about 8:15 a. m., on March 1, 1967, she was held up by two colored men who came into the store. One man was "low and dark" and weighed about 135 or 140 pounds. The number two man was tall, with brown skin, and weighed about 140 pounds. She estimated his age to be in his 30's. She identified the number two man as the one in the courtroom at the time she was testifying. Both men took money from the cash registers in the front of the building. Townsend took her into the back room to a cabinet which he forced her to unlock and she gave him the receipts from the previous night, because she did not want to get hurt. After taking the money from the drawer, Townsend told her to stay in a coal bin for five minutes. She stayed there about five or six minutes and then came out and pulled the burglar alarm. In a few minutes the police arrived at the liquor store and she related to a Lieutenant Christian and Patrolman Cox what had happened. She gave them a description of the two men and told the police that she could identify them.

318

On March 6, 1967, Patrolman Cox presented her with about five photographs and she was able to identify one of the photographs as Jonathan Townsend. She further stated that his moustache is now a little shorter than it was the day of the holdup; that she knew Jonathan Townsend's mother for quite a few years and at one time was very friendly with him or acquainted with him to the point where she would know him when he would walk down the street, because she lived in the same neighborhood with him; that when she knew him he was older than her son and her son was then about fifteen years of age. The last time she saw Jonathan Townsend was March 1, 1967, and before that she did not remember the last time she had seen him. However, she did not mention the name, Jonathan Townsend, to the police when they first interviewed her on the day of the robbery because she did not recognize Jonathan Townsend as the man who held her up on that day.

Jacob Christian, an East St. Louis Police Officer with the rank of Lieutenant, testified that he was riding with a partner by the name of Robert Cox on the first day of March, 1967, when he received a dispatch at 8:15 in the morning to go to Bob's Liquor Store at 1135 North Second Street, East St. Louis, Illinois. When he arrived there, a person by the name of Bobby Wilson was in the store and she described the circumstances of the holdup to him. Over the objection of the defendant, Christian related what Mrs. Wilson had told him concerning the details of the holdup and also related the description that she had given of the holdup men. He said that she told him that the number one man was darkskinned, weighed about 140 pounds, was about 35 years of age, 5 feet 6 inches tall, and wore blue jeans and a cap. The number two man was brownskinned, weighed about 165 pounds, about 33 years of age, thin moustache, wearing a light jacket with a hood attached, both were carrying revolvers and she could identify both

319

of them if they were apprehended. He also testified that he recorded her statement in the form of a written report at about ten or ten thirty in the morning, after they had returned to the police station.

Robert Cox, an East St. Louis policeman, testified that on the first day of March, 1967, he was working with Lieutenant Christian. Over the objection of the defendant, he read from the report prepared by Lieutenant Christian on that day, which included the following:

> "A. It's as it is here. She said the No. 1 man was darkskinned, 140 lbs., 35 years of age, about 5' 6", wearing blue jeans and a cap. The No. 2 man was brownskinned, 165 pounds, 33 years of age, thin moustache, wearing a light jacket with a hood on it."

The witness then testified that on March 6, 1967, he was making a door-to-door investigation and gave to the occupants of different homes a physical description of the holdup men. The State's Attorney then asked:

> "Q. Without going into that, did you have occasion to see Bobby Wilson on that date?
>
> "A. On March 6?
>
> "Q. Would it assist you in your recollection to hand you a copy of your report on that date?
>
> "A. Yes, it would.
>
> "Mr. Trotier: Same objection, Your Honor.
>
> "Court: Objection overruled.
>
> "Q. (By Prosecutor) Did you see Bobby Wilson that day?
>
> "A. I remember the time element now. It was 3:45. We made our door-to-door earlier. When we received this information we went out with pictures and placed them in front of this witness, Mrs. Wilson, and she picked two pictures out as being the two fellows who held her up March 1 of this year.

320

"Q. Does your report indicate the names of the persons she picked out as having perpetrated this robbery?

"A. It does.

"Q. Will you state the names please.

"A. Berlin Scott and Jonathan Townsend, for the hold-up of Bob's Tavern, March 1, 1967.

. . . . . .

"Q. What did you tell her, if anything, while you showed the photographs?

"A. I asked her if she would be able to identify the two fellows who held her up. She said, 'I told you I would.' She said, 'I definitely remember them.'

. . . . . .

"Witness: I placed the pictures out in front of her and she at once made a selection. She picked out the two pictures. She said, 'That's the two right here.' "

James Wilson, the husband of Bobby Wilson, testified that he was the manager of a shoeshine parlor at 8 South Fifteenth Street in East St. Louis, Illinois and was present at the shoeshine parlor on the 13th day of March, 1967, when the defendant, Jonathan Townsend, came in to see him and asked that his wife not identify him. James Wilson testified that he then asked Townsend what he was talking about and Townsend said, "You know they picked me up about that stickup and she made a mistake in identifying me." He further testified that Townsend "told me he come into a large sum of money. He was going to pay me and my wife well if she say she made a mistake in identifying him."

■■ Defendant contends that it was error not to exclude James Wilson's testimony of the attempted bribery because this was evidence of another crime and that

Wilson's testimony served only one purpose—that of bolstering his wife's testimony. This contention is without merit. People v. Gambony, 402 Ill 74, 83 NE2d 321; People v. Bloom, 370 Ill 144, 18 NE2d 197.

Defendant also contends the trial court committed prejudicial constitutional error when it permitted the in-court identification based on an out-of-court identification from a photograph in the absence of a showing of the "totality of circumstances" surrounding the extra-judicial identification indicating that the same was not unnecessarily suggestive and conducive to irreparable mistaken identification.

■ The United States Supreme Court has declared that it is unwilling to prohibit the employment of the method of initial identification by photograph, either in the exercise of its supervisory power or as a matter of constitutional requirement; instead, each case must be considered on its own facts, and convictions based on eye-witness identification at trial following pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, 390 US 377, 19 L Ed2d 1247, 88 S Ct 967, on remand 395 F2d 769.

■ We find nothing in the photographic procedure used in this case so suggestive as to give rise to a very substantial likelihood of irreparable misidentification of the defendant.

■ Defendant next contends that the delayed extra-judicial identification of defendant by selection from photographs where there were no safeguards such as defendant's counsel or an independent third-party observer is reversible constitutional error. United States v. Wade, 388 US 218, 18 L Ed2d 1149, 87 S Ct 1926, Gilbert v. California, 388 US 263, 18 L Ed2d 1178, 87 S Ct 1951, and Simmons v. United States, supra. Defendant's iden-

tification was made before indictment. In People v. Palmer, 41 Ill2d 57, 244 NE2d 173, our Supreme Court held that presence of counsel is required by federal decisions only when identification is made after indictment.

█ The defendant also contends that testimony given by Officers Cox and Christian as to what Bobby Wilson told them when they arrived at the scene of the crime constituted hearsay evidence and should have been excluded, and that by failing to do so the trial court committed reversible error. People v. Wright, 65 Ill App2d 23, 212 NE2d 126, People v. Lukoszus, 242 Ill 101, 89 NE 749. In Wright, the trial court permitted a police officer to testify as to a conversation with the victim fourteen days after the occurrence. In Lukoszus, the Supreme Court held it was reversible error to permit a police officer to testify that he got a description of the defendant from a purported witness to the crime. However, it was not indicated in that case how long after the purported crime the description was given.

The State contends that what Bobby Wilson told Officers Cox and Christian constituted a spontaneous declaration and was therefore admissible as an exception to the hearsay rule. We believe that what Bobby Wilson told Officers Cox and Christian when they arrived at the scene of the crime within a few minutes was admissible as a spontaneous declaration under the rationale of People v. Damen, 28 Ill2d 464, 193 NE2d 25, where the husband was charged with the rape of his wife by forcing her to submit to other men. Statements by the wife made to police officers after the police arrived were held to be admissible as "spontaneous declarations" made soon after the acts complained of occurred. The court pointed out that:

> ". . . 'Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence

of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence.' If a statement is a true spontaneous declaration or exclamation, it is admissible, for testimonial purposes, to prove the truth of what was said, in all types of action and not just in rape or related cases. (6 Wigmore on Evidence, 3rd ed 1940, sec 1750; People v. Poland, 22 Ill2d 175.) Nor does the rule necessarily require the utterance in question to have been made by a participant in the event. It applies with equal force to the exclamations or declarations by excited observers.

"In our opinion, the statement made by complainant immediately following the occurrence qualified, under the requirements of Poland, as a spontaneous declaration admissible in full. The fact that the officer asked complainant 'what happened' is, we believe, insufficient to destroy its spontaneity. People v. Harrison, 25 Ill2d 407." Id. at 471–72.

██ ██ Defendant also contends that the trial court committed reversible error in allowing Officer Cox to testify from the police report prepared by Lieutenant Christian on March 1, 1967, and from the police report prepared by Officer Cox on March 6, 1967. Permitting Cox to testify from the police reports was clearly error. (Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 57 NE2d 216; Allen v. Yancy, 57 Ill App2d 50, 206 NE2d 452.) His testimony that Bobby Wilson had identified the defendant from a group of photographs shown to her on May 6, 1967 was also error. (People v. Krejewski, 332 Ill 120, 163 NE 438; People v. Lukoszus, supra; People v. Cappalla, 324 Ill 11, 154 NE 451; People v. Wright, supra; People v. Harris, 83 Ill App2d 422, 228 NE2d 179.)

██ The prosecution argues that assuming that Officer Cox's testimony was inadmissible, it was harmless error because every relevant fact contained in his testimony was testified to by other witnesses. We cannot

324

agree with this statement. Bobby Wilson testified that she was able to identify just one of the men from the photographs presented to her by Officer Cox, while Cox testified from his report that she identified both Townsend and Scott from the photographs as the men who held her up on the day in question.

The truth of the charge against defendant rested almost wholly upon his identification by Bobby Wilson, and therefore it was important that the rulings on the evidence be correct. The improper testimony of Cox may have tended to bolster Bobby Wilson's identification and given it the effect of corroboration. Under these conditions we are not prepared to say that the error of Cox's testimony was harmless. (People v. Wright, supra; People v. Lukoszus, supra.)

For the foregoing reasons the judgment of the Circuit Court of St. Clair County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

EBERSPACHER and GOLDENHERSH, JJ., concur.