HAYES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 130. Argued March 5, 1970.—Decided April 3, 1970.*
(Also reported in 175 N. W. 2d 625.)

94

For the plaintiff in error there was a brief and oral argument by *Arthur L. Ebert, Jr.,* of Milwaukee.

For the defendant in error the cause was argued by *Michael Ash,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, *E. Michael McCann,* district attorney, and *Michael Skwierawski,* assistant district attorney.

HALLOWS, C. J.   On the evening of April 24, 1968, Joseph Hayes and Robert Brock are alleged to have robbed a food store on West Wells street in Milwaukee of about $87. Brock, the codefendant of Hayes, at gunpoint took the money from the storekeeper while Hayes proceeded to "take care" of an employee in another part of the store. About an hour later Hayes and Brock were found by the police hiding in a nearby apartment and were arrested. Within two hours both of them stood in a police lineup at the station with two members of the police force and were identified as the robbers by the store owner and his clerk. At this time Hayes was not represented by counsel.

At the preliminary examination counsel for Hayes was not allowed to cross-examine the store owner and his clerk to ascertain whether their identification was based upon the police lineup. Hayes was bound over for trial but prior thereto he filed a motion *pro se* for dismissal on the grounds of an illegal search and seizure, an illegal lineup, and a denial of counsel at the time of the lineup. Just prior to trial Hayes then claimed to be

indigent and counsel was appointed for him. Before trial the illegal search-and-seizure part of the motion was heard and denied. The part concerning the illegal lineup, which in fact amounted to a motion to suppress evidence, was deferred with consent of counsel until the question of exclusion of evidence arose during the trial by the prosecution attempting to put in evidence of identification based upon the lineup.

Hayes' first argument on appeal is that he was denied counsel at the lineup to which he was entitled under *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149, and *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178. Today this court in Nos. State 125 and 126, *Angus Wright v. State of Wisconsin,* and in Nos. State 127 and 128, *Bruce E. Jones v. State of Wisconsin,* ante, p. 75, 175 N. W. 2d 646, decided that a person after the issuance of a complaint and a criminal warrant for his arrest is entitled under *Wade* and *Gilbert* to counsel at a police lineup because such situation constitutes a critical stage substantially equivalent to a post-indictment lineup in the accusatorial period of a criminal prosecution.

In the instant case, although no complaint had been made and a warrant issued, we think the matter moved from a purely investigatory to an accusatorial stage. Here, Hayes was known by the police to be a law violator, was out on parole, expected to be arrested when apprehended, was hiding from the police, was arrested in the immediate area of the crime within an hour of the commission of the alleged crime, was taken to the police station and there subjected to a police-staged lineup. Under these facts the police lineup constituted a critical stage and Hayes was entitled to counsel. Even the police realized they had reached this stage and advised Hayes he had a right to counsel at the lineup. We make it clear, however, we are not deciding that a person has a

right to counsel at a lineup held during an investigatory stage of the criminal process.

Although Hayes was not represented by counsel at the time of the lineup, the police did advise him of his right to counsel. It is true this advice was incomplete in that it was not explained to Hayes that if he were indigent counsel could be appointed for him at county expense. But this inadequacy in advice was not prejudicial beyond a reasonable doubt because Hayes was able to hire his own counsel for the preliminary and he does not claim he was indigent at the time of the lineup. The decisive answer to this challenge, however, is found in the record made on the motion for a new trial. The evidence clearly disclosed that Hayes voluntarily and understandingly waived counsel at the time of the lineup and this he could do. See State v. Ruud (1969), 41 Wis. 2d 720, 165 N. W. 2d 153; State v. Strickland (1965), 27 Wis. 2d 623, 135 N. W. 2d 295; Hack v. State (1910), 141 Wis. 346, 124 N. W. 492.

Hayes further contends the manner in which the lineup was conducted was so unnecessarily suggestive and conducive of irreparable mistaken identification as to constitute a denial of due process. The trial court on motion for a new trial received evidence on this issue and decided the lineup was fair and fairly conducted. We agree and we need not go into the details of this testimony because even if the lineup were unfair, no identification based upon the lineup was introduced at the trial. Thus it is immaterial that the court did not hear the motion to dismiss or to suppress. Besides, counsel consented to the commencement of the trial and to a postponement of the hearing. Thus a violation of due process in the lineup, if any there was, was not only harmless but harmless beyond a reasonable doubt, which is the test for harmlessness of a constitutional violation. Whitty v. State (1967), 34 Wis. 2d 278, 149 N. W. 2d 557; Harrington v. California (1969), 395 U. S. 250, 89 Sup. Ct. 1726,

23 L. Ed. 2d 284. Since no objection was made by the trial counsel that the in-court identification was in any way dependent upon the identification at the police lineup, this aspect of the assigned error was waived at trial and no basis exists to raise this error on appeal. *See State v. Halverson* (1966), 32 Wis. 2d 503, 145 N. W. 2d 739; *Jones v. State* (1967), 37 Wis. 2d 56, 154 N. W. 2d 278, 155 N. W. 2d 571; *Okershauser v. State* (1908), 136 Wis. 111, 116 N. W. 769.

It was error for the county court at the preliminary examination to restrict the cross-examination of the state witnesses who identified Hayes at the preliminary and who viewed him and identified him in the police lineup. Hayes had a right on cross-examination to find out the basis for the witnesses' in-court identification so he could take effective action. If the identification were based upon the police lineup and the lineup were unfair or conducted in a manner which violated his rights, he could move before trial to have the evidence suppressed or at the trial object to the admission in evidence of the identification or to an in-court identification if tainted by the lineup identification. *United States v. Wade, supra; Pointer v. Texas* (1965), 380 U. S. 400, 85 Sup. Ct. 1065, 13 L. Ed. 2d 923; *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441. However, this error was not prejudicial because the lineup was fair and besides Hayes did not argue his motion to suppress before trial or object to identification testimony at the trial.

Because the next issue involves a substantial question directly concerning the powers of a trial court and the administration of criminal justice in Wisconsin, this court has decided to review the law concerning the power of the trial court to modify a sentence. The present rule was first stated in *State ex rel. Zabel v. Municipal Court* (1923), 179 Wis. 195, 199, 190 N. W. 121, 191 N. W. 565: "It is a rule of general application that a court has

power to reconsider the judgment and sentence in a criminal case and to revise and correct it by modifying and even by increasing its severity if done during the term at which the judgment and sentence is pronounced and before the sentence has been executed or put into operation. 16 Corp. Jur. 1314. At common law a court had no power to revise its judgment and sentence in a criminal case after the expiration of the term or after the execution of the sentence has commenced." Whether this language in *Zabel* was dicta or law, it has been accepted and followed by this court down to the present.[1]

At the time the rule was adopted there was a conflict in the common law of the various states. In 16 Corp. Jur. 1314, sec. 3097, the only authority relied on in *Zabel*, it was also stated that it had been held that a sentence which had been partly executed may be revised and other diminution or mitigation substituted for it during the term. Over the years this version or what might be considered numerically the minority rule has gained favor with the authorities which have replowed the problem.

The view that a trial court could not change or modify a sentence after the commencement of the execution of the sentence was based in part upon *Ex Parte Lange* (1873), 85 U. S. (18 Wall.) 163, 21 L. Ed. 872. In *Lange* it was held where a statute authorized an imprisonment or in the alternative a fine that a sentence which imposed both could not be modified and a new sentence of imprisonment only imposed after the payment of the fine which operated as a satisfaction of the

---

[1] *State ex rel. Traister v. Mahoney* (1928), 196 Wis. 113, 122, 219 N. W. 380; *Brozosky v. State* (1928), 197 Wis. 446, 449, 222 N. W. 311; *Siegel v. State* (1930), 201 Wis. 12, 16, 229 N. W. 44; *State ex rel. Reynolds v. County Court* (1960), 11 Wis. 2d 512, 515, 105 N. W. 2d 812; *Weston v. State* (1965), 28 Wis. 2d 136, 146, 135 N. W. 2d 820; *State v. Koerner* (1966), 32 Wis. 2d 60, 63, 145 N. W. 2d 157; *Smith v. State* (1967), 33 Wis. 2d 695, 702, 148 N. W. 2d 39.

first judgment. The *Lange Case* was construed by many state cases to mean and was cited in *United States v. Murray* (1928), 275 U. S. 347, 358, 48 Sup. Ct. 146, 72 L. Ed. 309, for the proposition "The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it."

The *Murray Case* was cited by this court in *State ex rel. Traister v. Mahoney, supra,* and relied upon with *Zabel* for that proposition. However, three years later in *United States v. Benz* (1931), 282 U. S. 304, 51 Sup. Ct. 113, 75 L. Ed. 354, the United States Supreme Court referred to this statement of the law as being unfortunate and an improper interpretation of language and as causing many state decisions to be erroneously decided upon its authority. *Benz* pointed out that the implied powers of a trial court over its judgment were not in issue in the *Murray Case* but rather, a statutory power to grant probation conferred by the Probation Act which was construed to mean a trial court could not exercise the power after a sentence was commenced.

Besides this explanation of the basis of the conflicting views, *Benz* pointed out the so-called lack of power to change a sentence after the commencement thereof was not a question of jurisdiction or the power of the court but the result of the application of the theory that to change a sentence after commencement raised a question of double jeopardy. However, this question can only arise if the sentence is increased; there is no question of double jeopardy where the length of sentence is shortened.

We think the present rule should be modified so that a trial court may exercise its inherent power to change and modify its judgments after the execution of the sentence has commenced and the term ended. The question is what limitation should be placed upon such power in the interest of promoting justice in the administration of criminal law. There seems to be no question that a

court has the power to correct formal or clerical errors or an illegal or a void sentence at any time. *See* 21 Am. Jur. 2d, *Criminal Law,* p. 539, sec. 572, p. 541, sec. 574. It is common knowledge a trial court has the power unrestricted by a term of court or the service of a sentence to set aside the sentence and grant a new trial which may result in a different sentence. There is no question that a trial court has power after receipt of a mandate issued upon the reversal or affirmance of the judgment or dismissal of the appeal by this court to amend its sentence in accordance with the mandate. *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9. In *State v. Leonard* (1968), 39 Wis. 2d 461, 159 N. W. 2d 577, we held on reconviction and resentencing or upon resentencing the previous sentence or its partial execution did not constitute a limitation upon the power to increase the sentence if events occurred or came to the court's attention subsequent to the first imposition of sentence which warranted an increased sentence and the grounds for such increase were stated in the record. This view was followed in *North Carolina v. Pearce* (1969), 395 U. S. 711, 89 Sup. Ct. 2072, 23 L. Ed. 2d 656. It has been settled that a trial court may place a person on probation and reserve sentencing which may be imposed in another term upon violation of probation. *Brozosky v. State, supra.*

We think sound public policy favors the exercise by a trial court of its power to amend, modify, and correct a judgment of sentencing even though the court term has expired or the service of the sentence has been commenced. There are several cases from other states which support the view in *Benz.*[2] This rational of not hamper-

[2] *See Gobles v. Hayes* (1942), 194 Ga. 297, 298–300, 21 S. E. 2d 624; *Czaplinski v. Warden* (1950), 196 Md. 654, 657, 75 Atl. 2d 766; *Madison v. State* (1954), 205 Md. 425, 431, 109 Atl. 2d 96; *State ex rel. Williams v. Riffe* (1945), 127 W. Va. 573, 578, 34 S. E. 2d 21. *See also Commonwealth v. Kazee* (Ky. 1952), 252

ing the exercise of the trial court's power represents a modern tendency and the old rule has been criticized as too broad. *See* 21 Am. Jur. 2d, *Criminal Law,* p. 538, sec. 571; 24 C. J. S., *Criminal Law,* p. 598, sec. 1589. The Approved Draft, 1968, of the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing, Alternatives and Procedures, Standard 6.1 provides:

"**Authority to reduce: general.**

"(a) It may be appropriate to authorize the sentencing court to reduce or modify a sentence within a specified time after its imposition or the final resolution of an appeal if new factors bearing on the sentence are made known. It is inappropriate for defense counsel or others on the defendant's behalf to make an ex parte approach to the judge. It is likewise inappropriate for a judge to reduce or modify a sentence by any proceeding which does not occur in open court."

This standard makes no reference to the commencement of service of a sentence as being of any importance. In the commentary to this section, it is stated that the authority to change an imposed term of imprisonment within the same term of court has been carried over into many jurisdictions by a provision of authority to reduce the sentence, limited by a specific period of time rather than by the sitting or term of court.[3]

---

S. W. 2d 20; *Bax v. Fletcher* (Ky. 1953), 261 S. W. 2d 662, 663, 664, *District Attorney for the North District v. Superior Court* (1961), 342 Mass. 119, 172 N. E. 2d 245. *Cf. State v. Blanchard* (1960), 156 Me. 30, 53, 159 Atl. 2d 304, and cases collected in Annot. (1947), 168 A. L. R. 706, 710, 711, the latest annotation we can find.

For a discussion of the early English procedure in sentencing, *see* Orfield, *Criminal Procedure from Arrest to Appeal,* chapter IX, p. 526.

[3] *See e.g.,* Florida Stats. Anno. (1969 Supp.), sec. 921.25 (within the longer of the same term of court, or sixty days from imposition or the resolution of an appeal);

In *District Attorney for the North District v. Superior Court* (1961), 342 Mass. 119, 172 N. E. 2d 245, the Supreme Judicial Court of Massachusetts reexamined its earlier cases on this subject, found they contained dicta similar to the language in *Zabel* and came to the conclusion the better rule to adopt was that set forth in *United States v. Benz, supra,* and since terms of court were abolished in Massachusetts adopted their sittings as a reasonable period within which an application could be made to the court for the exercise of its judicial power to mitigate a sentence.

We think the present Wisconsin law relating to terms of court is unrealistic in terms of a limitation upon the time within which an application can be made to the court to exercise its inherent power to amend a judgment of sentencing. The terms of court are not identical in the various courts of Wisconsin. Sec. 954.005, Stats., provides that terms in the county court for criminal cases shall be the first Monday in April or the first Monday in October "whichever is the more appropriate in context." In circuit courts we have both general and special terms in those circuits which embrace more than one county, and sec. 252.11, provides every term in any

---

Kansas Stats. Anno. (1965 Supp.), sec. 62–2239 (within one hundred twenty days of imposition);

Delaware Code Anno. Superior Court Rules (1968 Supp.), Criminal Rule 35 (b) (recently lengthened to within four months of imposition or the resolution of an appeal formerly sixty days);

18 USCA Federal Rules Criminal Procedure, Rule 35 (lengthened to within one hundred twenty days effective July 1, 1966, formerly sixty days);

9B Maryland Anno. Code (1966 Supp.), Rules 764 (b) (1) (within ninety days of imposition or resolution of an appeal);

New Jersey Stats. Anno. Criminal Practice (1969 Rev.), Rule 3:21–10 (a) (within sixty days of judgment of conviction, or twenty days from the resolution of an appeal.)

county is a special term in every other county in the same circuit with some exceptions. Certainly a rule should not depend on whether a sentence is made at a special or general term. But general terms of the circuit courts are not uniform. In the first circuit, county of Kenosha, the terms commence the third Monday of March and September; but Milwaukee county has four terms per year starting with the first Monday of January, April, July, and October. Winnebago county, in the third circuit, has three terms commencing the second Monday of January, April, and September. Terms of court are obsolete as a time limitation and constitute no rational basis for an application to a trial court to exercise its inherent power. Besides this, it is unfair for one defendant who is sentenced a week before the expiration of a term to have only one week in which to make an application while another defendant has three or four months because he was sentenced at the beginning of a term. *See* 24 C. J. S., *Criminal Law*, p. 584, sec. 1587.

We are aware there are counter arguments to the modification of our present rule, *i.e.*, that the sentencing process must at some point come to an end and there are other ameliorative devices such as appellate review of sentencing or the pardoning power to provide relief. Within reasonable limits we think an unjust sentence should be corrected by the trial court. It is more important to be able to settle a matter right with a little uncertainty than to settle it wrong irrevocably. It should be kept in mind that under the indeterminate-sentence law the modification of a sentence in most cases can only affect a reduction of the maximum term of the sentence or the time the defendant can be kept under control of the state. The minimum term and eligibility to parole are determined by statute. The place of detention, amount of security, length of incarceration and parole are matters within the primary jurisdiction of the De-

partment of Health & Social Services under its program of rehabilitating criminals.

We adopt one year from the date of sentencing for the time being as a time limit within which a motion can be made to have the court exercise its inherent power to modify a criminal sentence. This period in most cases will be the same as the period now in effect for making a motion for a new trial and for a motion to withdraw a plea of guilty. On July 1, 1970, the new criminal code will become effective and the time within which a motion for a new trial can be made is reduced to ninety days after judgment of conviction.[4] On and after July 1st we think the time within which to move for a modification of a sentence imposed on or after that date should by analogy be ninety days from the date of sentencing but the court need not decide the motion within that period. In any event, motions involving sentences imposed prior to July 1, 1970, shall be made within ninety days of that date.

In the instant case, Hayes had commenced serving his sentence and the term in which he was sentenced had ended when the court reduced the maximum time of his sentence from ten years to eight years. This occurred some ten months after sentencing but is within the limits of the new rule. As a matter of fact the reduction was sua sponte upon the hearing of a motion for a new trial.

The state argues a reduction of the sentence was in effect an abuse of discretion. Of course, the inherent power of the court must be exercised within the limits of sound sentencing discretion and the reasons for the modification should be stated. In the instant case the trial judge believed he was in error in imposing a ten-year sentence because he was misinformed at the time

---

[4] Ch. 255, Laws of 1969 (sec. 974.02, Stats.). *See* sec. 971.08 (2), Stats., allowing one hundred twenty days after conviction to file a motion to withdraw a plea of guilty.

of the sentencing as to Hayes' previous criminal record. He first learned on the motion for a new trial that some of Hayes' prior offenses occurred when he was a juvenile and the others were no more extensive than Brock's who had received six years. This lack of correct information he states was partly his own fault because he did not ask for a presentence report. The decision to reduce the sentence to eight years was also motivated by a result which could be subjected to a constitutional question pointed out in *Jung v. State* (1966), 32 Wis. 2d 541, 145 N. W. 2d 684. We think there was no abuse in discretion in modifying the sentence.

While the modification took the form of vacating the judgment and ordering a new sentence, we do not consider this procedure to be relevant in this case although the proper procedure to modify a valid judgment is to amend the judgment and not vacate it. If the judgment is voided or the manner in which it is made is defective, the judgment should be vacated and a new sentence made. The amending of a valid judgment by order or judgment rather than vacating it and resentencing avoids questions of double jeopardy and of credit for prior time served.

The trial court's oral amendment of the sentence on June 30, 1969, and its written order of July 14, 1969, are valid and should be recognized as a valid sentence by the warden of the Wisconsin State Prison. The sentence reduction in open court was certified to the warden by the clerk of court on June 30, 1969.

*By the Court.*—Judgment of conviction is affirmed; and the order denying a new trial and reducing the maximum sentence from ten years to eight years is valid and is affirmed.

ROBERT W. HANSEN, J. (*concurring*). As to the right to counsel at pretrial police "lineups" or "showups," the United States Supreme Court has laid down a rule bind-

ing upon all courts in the land. As stated in *Wade*,[1] rephrased in *Gilbert*,[2] repeated in *Simmons*,[3] the rule is that, absent an intelligent waiver, presence of counsel is required at a post-indictment lineup.

The repeated reference to *post-indictment* lineups is more than something thrown in for good measure. Any post-indictment proceeding clearly is a part of the accusatorial phase of the criminal process. This involves more than recognizing that a post-indictment lineup is more a part of the preparation for trial than a matter of identifying a possible suspect. It involves the availability or procurability of counsel to be present at the lineup without extended delay. As was the case in *Wade* at that stage, counsel will in most cases have been appointed by the court or retained by defendant and thus counsel's presence at the lineup can easily be arranged. If counsel has not been retained or court appointed, the certainty of an early appearance before a magistrate precludes the possibility of any lengthy delay in arranging the lineup. At earlier stages the practical difficulties of appointing or arranging for the presence of counsel appear formi-

[1] ". . . there can be little doubt that for Wade the *post-indictment lineup* was a critical stage of the prosecution at which he was 'as much entitled to such aid [of counsel] . . . as at the trial itself.' . . ." (Emphasis supplied.) *United States v. Wade* (1967), 388 U. S. 218, 236, 237, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149.

[2] ". . . We there [*United States v. Wade*] held that a *post-indictment pretrial lineup* at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel . . . ." (Emphasis supplied.) *Gilbert v. California* (1967), 388 U. S. 263, 272, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178.

[3] ". . . The rationale of those cases [*i.e., United States v. Wade* and *Gilbert v. California*] was that an accused is entitled to counsel at any 'critical stage of the prosecution,' and that a *post-indictment lineup* is such a 'critical stage.' " (Emphasis supplied.) *Simmons v. United States* (1968), 390 U. S. 377, 382, 383, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247.

dable. Thus the limiting of the *Wade-Gilbert* rule to post-indictment situations has sound reasons to recommend it. Regardless of the reasons, the limitation is stated in the rule. If the rule is to be extended to earlier stages or other situations, the court that authored the rule should do the extending.

It is clear that a post-warrant lineup in Wisconsin is the equivalent of the post-indictment situation involved in *Wade-Gilbert*.[4] However, here the majority goes beyond the rule as stated in *Wade-Gilbert* to find a right to counsel in a post-arrest, pre-warrant or pre-indictment situation. The trip beyond the *Wade-Gilbert* rule is short enough, limited to the special fact situation of this case, but it is a trip that the writer would not make.

The majority opinion is limited to lineups, presumably limited to police station lineups, and certainly limited to lineups that are not a part of the "investigatory stage of the criminal process." The trouble will be that police officers have no crystal ball to determine whether a particular post-arrest lineup will or will not subsequently be found to have been investigatory rather than accusatorial in purpose. If law officers elect to run this gauntlet, and, if the lineup is later held to have been held for purposes other than that of simply identifying a suspect, an in-court identification based on such lineup is inadmissible, and a guilty person may escape conviction. Equally important, if the probability of challenge, the possibility of unconstitutionality, plus the practical difficulties of arranging for appointment of counsel at the post-arrest stage, cause a shying away from all post-arrest lineups, those not guilty will have lost the early opportunity of being cleared which a fair lineup presents. The substitution of identification from police department "mug files" may prove to be a pyrrhic victory, at least for the innocent. A lineup can send a suspect home

---

[4] *See Wright v. State*, ante, p. 75, 175 N. W. 2d 646.

cleared of involvement as well and as often as it can result in his being held for trial.

The *Wade-Gilbert* rule, applying to post-indictment or post-warrant situations, is clear and definite—in its limits as well as in its application. The same cannot be said for this majority's extension of the rule that requires law officers to determine in advance whether a particular lineup is investigatory or accusatory in nature. Effective law enforcement will be hampered, and the search for truth will not be served by the majority holding. The Illinois Supreme Court has expressly limited *Wade* and *Gilbert* to post-indictment lineups.[5] Unless or until the United States Supreme Court extends its *Wade-Gilbert* rule, the writer would limit the right to counsel to post-indictment or post-warrant situations.

---

[5] *People v. Palmer* (1969), 41 Ill. 2d 571, 244 N. E. 2d 173; *People v. Townsend* (1969), 111 Ill. App. 2d 316, 250 N. E. 2d 169.