WRIGHT, Plaintiff in error, v. STATE, Defendant in error. [Nos. State 125, 126.]
JONES, Plaintiff in error, v. STATE, Defendant in error. [Nos. State 127, 128.]

*Nos. State 125–128. Argued March 5, 1970.—Decided April 3, 1970.*
(Also reported in 175 N. W. 2d 646.)

76

78

For the plaintiff in error Angus M. Wright there was a brief and oral argument by *John B. Werra* of Milwaukee.

For the plaintiff in error Bruce E. Jones there was a brief and oral argument by *Charles Rowan* of Milwaukee.

For the defendant in error the cause was argued by *Theodore J. Hodan,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J. While a number of challenges are made by defendants to their convictions on charges of armed robbery, the principal issues raised deal with the admission of certain testimony at their trial. We deal first with the objections to the police lineups at which the defendants were identified as perpetrators of the crime. Here the trial court conducted a pretrial hearing to determine the lineup issues raised, much as would be done on a challenge to the admissibility of a confession.[1] When an objection is made to an in-court identification allegedly based on a lineup claimed to be defective, the holding of such *Goodchild*-type hearing greatly aids a reviewing court in considering the issues raised and findings made.

*Three lineups.*

Three police lineups were conducted in this case, one in Ohio and two in Milwaukee. The one in Ohio involved witness Martha Crabbe. The trial court found the Ohio lineup to have been improperly conducted, and barred any in-court identification of defendants by wit-

---

[1] *See State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 264, 133 N. W. 2d 753; *Roney v. State* (1969), 44 Wis. 2d 522, 171 N. W. 2d 400.

ness Crabbe. No issue is raised on this appeal concerning such trial court holding, and no comment on it is required. There is no connection between the lineup identification made in Ohio by witness Crabbe and the in-court identifications of witnesses Lemberger and Hornik. Two separate police lineups were conducted at police headquarters in Milwaukee. Both witness Lemberger and witness Hornik identified the defendants as two of the robbers on the first lineup. It is these two lineups and the in-court identifications by witnesses Lemberger and Hornik which are relevant to the issues raised on this appeal.

*Counsel required.*

We deal here with two Milwaukee lineups, both conducted after the issuance of a complaint and warrant, but before the filing of the information as well as before the trial. The attorney general points out that the *Wade* and *Gilbert* cases,[2] in which the United States Supreme Court established the right to presence of counsel at lineups, dealt with post-indictment lineups. In *Wade*, an indictment had been filed, counsel appointed for the defendant and the lineup then held without notification to such counsel. In *Gilbert*, an indictment had also been filed and there was a similar failure to notify defendant's counsel of the impending lineup. The emphasis upon the post-indictment aspect of the lineup is clear in both *Wade*[3] and *Gilbert*.[4] While *Wade* and

---

[2] *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178. *See also: Stovall v. Denno* (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199, holding *Wade-Gilbert* to apply only to lineups occurring after June 12, 1967.

[3] ". . . there can be little doubt that for Wade the post-indictment lineup was a critical stage . . . ." *United States v. Wade, supra,* 388 U. S. at pages 236, 237.

[4] ". . . We there held [Note: in *United States v. Wade*] that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; . . ." *Gilbert v. California, supra,* 388 U. S. at page 272.

*Gilbert* have been referred to without mention of the post-indictment nature of the lineups involved,[5] it is at least clear that what was before the court in those cases was a post-indictment lineup, and this factor was specifically mentioned, in fact, stressed by the court, and subsequently repeated.[6]

The attorney general argues that the equivalent of filing an indictment under the federal and California procedures involved in *Wade* and *Gilbert*, is the filing of an information under the Wisconsin procedure. We do not agree. A greater degree of equivalency exists between the filing of the indictment and the issuing of the criminal warrant following the signing of the complaint and the holding of a hearing before a neutral magistrate. After the issuance of the warrant, as after the filing of the indictment, it is clear that the matter has moved from an investigatory stage to an accusatorial one. The United States Supreme Court in *Wade* and *Gilbert* dealt with the post-indictment fact situation before it. We will do the same, ruling here only that a post-warrant lineup in Wisconsin is substantially equivalent to a post-indictment lineup in the federal system. Since the lineup here did take place after the issuance of the warrant, the presence of counsel, or, in the alternative, waiver of counsel, was required.

---

[5] "In *United States v. Wade* . . . this Court held that because of the possibility of unfairness to the accused in the way a lineup is conducted, a lineup is a 'critical stage' in the prosecution, at which the accused must be given the opportunity to be represented by counsel. . . ." *Foster v. California* (1969), 394 U. S. 440, 442, 89 Sup. Ct. 1127, 22 L. Ed. 2d 402. *See also: Massen v. State* (1969), 41 Wis. 2d 245, 253, 163 N. W. 2d 616.

[6] ". . . The rationale of those cases [Note: *United States v. Wade* and *Gilbert v. California*] was that an accused is entitled to counsel at any 'critical stage of the prosecution' and that a post-indictment lineup is such a 'critical stage.'" *Simmons v. United States* (1968), 390 U. S. 377, 383, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247. *See also: State v. Clarke* (1967), 36 Wis. 2d 263, 274, 153 N. W. 2d 61.

*Counsel present.*

The trial court found that both defendants were represented by counsel at the lineups conducted by the Milwaukee police. Such finding is not to be upset on appeal unless contrary to the great weight and clear preponderance of the evidence.[7] The issue of credibility as to conflicting testimony on the issue involved is for the trier of fact to determine.[8] The evidence at the hearing established that the police did inform the defendants of their right to have counsel present at the time of the lineup. One of the defendants then called a Milwaukee attorney. He was unable to attend, but sent one of his associates to be present at the lineup. This attorney testified that he arrived on the scene, talked to the defendants, and then observed the lineup. He testified that he spoke to both defendants before the lineup, informed them of their rights before the lineup was conducted, discussed fees, and spoke to both defendants after the lineup. Another associate of the attorney also came down to the police station, and apparently observed the second lineup. A police officer testified that he allowed defendant Wright to phone an attorney, that both defendants had refused to stand in the lineup until the attorney got there, that the police honored this demand, and that there was an attorney present at both lineups. It is true that defendant Wright testified that the attorney left before the lineups, and that defendant Jones testified that he never did have the chance to talk with an attorney before the lineup and that the attorney showed up after the lineup. The trial court was not required to disbelieve the testi-

---

[7] *Schwamb v. State*, ante, p. 1, 173 N. W. 2d 666, 671; *State v. Herrington* (1969), 41 Wis. 2d 757, 771, 165 N. W. 2d 120.

[8] "On review, it is not the function of the appellate court to decide which witnesses are to be believed. That is the exact function of the trier of fact, be such trier of fact judge or a jury. . . ." *State v. Christopher* (1969), 44 Wis. 2d 120, 127, 170 N. W. 2d 803.

mony of both the attorney and the police officer that counsel was present at both lineups. The trial court finding that counsel was present stands.

*Effectiveness of counsel.*

The claim here that the representation by counsel at the time of the lineups was "ineffective" requires a review of the role of an attorney at the time and place of a lineup. The presence of counsel at the lineup is intended to make possible the reconstruction at the time of trial of any unfairness that may have occurred at the time of the lineup.[9] The important purpose to be served is that of observer. A police lineup is not a magisterial or judicial hearing at which a record is made and objections to procedures can be entered. The lawyer is present as eyes and ears for the accused, not as interrogator or cross-examiner. It is his presence, not his participation, that is relied upon to prevent unfairness and lessen the hazards of eyewitness identification at the lineup itself.[10] Counsel present at the time of the lineup in this case testified that he did not object to the lineup because he believed it to be fair. He was not required to object, when he had no valid objection to make and when, as always would be the case, there was no judge or magistrate present to rule on the propriety of his objection. His function, as observer, was to assist the court in reconstructing the circumstances of the lineup at the time of trial. That is what he did, and

[9] ". . . In short, the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification." *United States v. Wade, supra,* 388 U. S. at pages 231, 232.

[10] ". . . Thus in the present context, where so many variables and pitfalls exist, the first line of defense must be the prevention of unfairness and the lessening of the hazards of eyewitness identification at the lineup itself . . . . since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, . . ." *Id.* at pages 235, 236.

that is all that he was required to do. There is no basis for any claim of ineffectiveness of counsel.

*Counsel at trial.*

Spelling out the role and reason for presence of counsel at the time of the police lineup makes clear the unsoundness of the defendants' contention that the attorney who was present at the lineup must also be the attorney who conducts the trial. The presence of an attorney at the lineup, whether or not such attorney eventually represents the defendant at the time of trial, is all that is required to aid in reconstructing the circumstances of the lineup at the time of trial. In fact, the limited purpose served by the presence of counsel at the time of the lineup has led to a holding that the fact that the attorney present at the lineup did not represent the defendant on the charge for which the lineup was conducted did not prejudice the defendant, the court stating:

"We do not believe that Wade always requires the presence of a lawyer with certificate in hand in the given case. Underlying the Wade case is a philosophy that the lineup should not be exclusively a police function and that the defendant ought to have some protection at it and eyes there representing him. . . ." [11]

To hold otherwise would raise serious questions about the right of a defendant to change counsel between the time of lineup and time of trial, or, at least, of the right of defense counsel to withdraw from a case during such interim period. It is enough here to hold that the attorney present at the lineup need not be an attorney participating in the subsequent trial.

*Fair lineup.*

Defendants contend that the makeup and overall surroundings of the lineups conducted in this case con-

---

[11] *Zamora v. Guam* (9th Cir. 1968), 394 Fed. 2d 815, 816.

stituted suggestive and improper influences which in turn affected the in-court identification. The test of the fairness of a lineup has been stated as follows: "However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of circumstances surrounding it . . . ." [12] The "totality of circumstances" reference is a reminder that there can be an infinite variety of differing situations involved in the conduct of a particular lineup. The police authorities are required to make every effort reasonable under the circumstances to conduct a fair and balanced presentation of alternative possibilities for identification. The police are not required to conduct a search for identical twins in age, height, weight or facial features. If an Eskimo were to be involved in a burglary in Vernon county, it is not to be expected that the sheriff will seek to locate or send to the Arctic for tribesmen who could pass as brothers. What is required is the attempt to conduct a fair lineup, taking all steps reasonable under the "totality of circumstances" to secure such result.

Here both defendants were Negroes, and four Negro men, two of them police officers, stood in the lineup. The defendants were nineteen and twenty years of age at the time of the lineup. The two officers were twenty-nine and thirty-six years of age. Their weights varied as follows: Jones, 180 lbs.; Wright, 160 lbs.; the two officers, 170 and 190 lbs. As to height, Jones was 5 ft. 11 in.; Wright, 6 ft. 1 in.; the two officers 6 ft. and 6 ft. 2 in., respectively. Two separate lineups were held, with no conferring between witnesses, each making an independent and individual choice. Each witness wrote the number of the person they picked out of the lineup on a piece of paper. The witnesses testified that there was no contact with the suspects prior to the time they appeared on the platform in the lineup. The

---

[12] *Stovall v. Denno, supra,* 388 U. S. at page 302.

trial court held the lineups to have been fairly conducted, and we concur.

*Independent origin.*

The trial court also found that the in-court identification of the defendants by witnesses Lemberger and Hornik originated from sources other than the lineup. Such finding is clearly sustained by the evidence. The witnesses testified that they had observed the defendants on the morning of the day when the crime was committed and that they had clearly observed defendants at the time of commission of the crime. Prior to the lineup, a detective visited the home of witness Anthony Lemberger with approximately fifteen police file pictures. Lemberger made a positive identification of defendant Wright and a tentative identification of Jones, noting that Jones' hair style on the picture was different from his hairdo on the day of the robbery. On the same day, approximately fifteen pictures from police files were shown to witness Hornik, who immediately identified defendant Wright, and tentatively identified defendant Jones, noting the change in Jones' hair style on the day of the robbery. These identifications were made independent of each other, and prior to the police lineups which are challenged. The trial court properly concluded that the in-court identifications of defendants were not the product of the lineups, and that finding alone would, of course, dispose of all of defendants' objections to the in-court identifications.

*The Wright confession.*

The trial court conducted a hearing separate from the trial on the admissibility of the confession of defendant Wright. At that hearing police officer Jackson testified that he interviewed both defendants and informed them

of their *Miranda* [13] rights. Both refused to discuss the crime. Before the lineup on the night of October 11th, defendant Wright stated that he wished to talk to Jackson. Jackson saw Wright and once again informed him of his *Miranda* rights. Wright then made a statement confessing his participation in the crime, but not implicating anyone else. Defendant Wright took the stand to deny making any statement to Jackson, to assert he was not given the *Miranda* warnings, to state that he had had several drinks on the plane flight from Ohio to Milwaukee. On cross-examination, Wright stated that he remembered the trip to Milwaukee, the arrival, the trip from the airport to the police station, the booking procedure, talking to an attorney and the lineup.

The trial court held Wright's confession to be admissible. He found that Wright was not intoxicated at the time he made the statement, that he was properly given the *Miranda* warnings; that the confession was voluntary, in fact, being a volunteered statement. These findings have ample support in the record. It was defendant Wright who asked to see Jackson in order to make the statement. The confession thus is not a product of police questioning but a completely volunteered statement. [14] An individual in custody who has claimed the right to remain silent under *Miranda* has the right to change his mind and to decide to volunteer a statement.

On appeal Wright adds to his trial court arguments the contention that there was here undue delay in taking him before a magistrate and having counsel appointed. While unreasonable delays in bringing an accused before a magistrate may affect the admissibility of an interim confession, there is here no more than

---

[13] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

[14] "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.* at page 478.

a delay to await the outcome of the lineup before bringing the defendant before the magistrate. In this connection it should be mentioned that a lineup is a double-edged blade. It may strengthen the case against a suspect: it may, and often does, result in a failure to identify that leads the state to drop its prosecution. We do not find here an unreasonable delay nor one that renders Wright's confession inadmissible.

*Effect on Jones.*

Defendant Jones argues that the admission of Wright's confession was, as to Jones, prejudicial error under the *Bruton* doctrine [15] summarized by this court in these words:

". . . the confession of one defendant inculpating the other defendant was inadmissible in a joint trial and that the hearsay error committed by the admission of such a statement could not be corrected by instructions. . . ." [16]

The weakness of this argument is that Wright's confession did not inculpate Jones. Wright specifically stated that he would not incriminate anyone else in his confession, and he did not. His only reference to other people in his statement that he split the robbery money five ways, with the four others in the split left unnamed. In *Bruton,* the United States Supreme Court stressed the fact there the inculpated codefendant did not have the opportunity to cross-examine the confessor.[17] Here defendant Wright did take the stand.

[15] *Bruton v. United States* (1968), 391 U. S. 123, 88 Sup. Ct. 1620, 20 L. Ed. 2d 476.

[16] *Renner v. State* (1968), 39 Wis. 2d 631, 638, 159 N. W. 2d 618. *See also: State v. Cartagena* (1968), 40 Wis. 2d 213, 220, 161 N. W. 2d 392.

[17] ". . . The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. . . ." *Bruton v. United States, supra,* 391 U. S. at page 136.

He was not cross-examined by Jones' counsel. The reason is obvious. The Wright confession had neither impact nor relevancy on the case against Jones.

*Strong language.*

Objection is made to the testimony of witnesses Lemberger and Hornik as to what defendant Jones said to each at the time of the armed holdup. It is enough here to state that profanity of a most unflattering nature was included. It is argued that the sharpest of the epithets were not recalled or, at least not mentioned, by the same witnesses when they testified at the time of the preliminary hearing. No objection was made to such testimony at the time of trial. No motion to strike was made. No request to instruct the jury to disregard the statements was made. No motion for mistrial was made. Even if the objection to such testimony had merit, the right to object has been lost. It cannot be permitted to serve as a time bomb with a long fuse, set to explode only on appeal.[18] If objection had then been made, the trial court would have faced a difficult decision. When a witness under oath testifies that a defendant used foul and abusive language at the time and place of the crime, it cannot be expected that the witness or the trial court will paraphrase the exact language remembered into more genteel or less objectionable wording. Paraphrasing is not that exact a science. When an eyewitness to a crime is asked what a particular defendant said, the required answer is what the defendant then said in the exact language he used at the time.

It is additionally claimed that the district attorney, by calling such statements to the jury's attention in his closing argument, "inflamed" the jury against the defendant. Once again no objection was made at the

[18] *See Bosket v. State* (1966), 31 Wis. 2d 586, 599, 143 N. W. 2d 553.

time of closing argument, and cannot be objected to on appeal, nor made the basis for a request for a new trial.[19] Waiver aside, what the prosecutor said in his closing argument was this: "You remember Mrs. Hornik? She saw them come in the afternoon, and she protested about Mr. Jones kicking Mr. Lemberger. You recall what she said. She said Jones said, and I am not repeating this to inflame you, but I am pointing out not only did she see them she had a chance to hear them speak." For the purpose stated and reason given the prosecutor's reference to the testimony given is not improper. Profanity may be losing its shock appeal, but a person is still likely not to forget one who shouts at him what the lady employee of the credit union states the defendant Jones shouted at her when she asked him to stop kicking a fellow-employee who had slipped and fallen to the floor. As the prosecutor put it, "not only did she see them she had a chance to hear them speak."

*Sentence imposed.*

Defendant Jones contends that improper factors entered into the sentence imposed. The claim is that the trial court was influenced by prejudicial statements of witnesses and by his "annoyance" at defendant Jones. In reviewing a sentence for abuse of discretion, we start with the presumption that the trial court acted reasonably and ". . . there must be a showing that in determining the sentence . . . the trial court based its

---

[19] "Defendant urges this court to grant a new trial because certain allegedly prejudicial statements were made by the prosecution during closing argument. Without reaching the merits of this question, the argument must be rejected because it is clear that trial counsel did not object at any time to the statements of the prosecutor, nor did he move for a mistrial during or at the close of the argument. . . ." *Price v. State* (1967), 37 Wis. 2d 117, 134, 135, 154 N. W. 2d 222. *See also: State v. Ruud* (1969), 41 Wis. 2d 720, 726, 165 N. W. 2d 153; *Jandrt v. State* (1969), 43 Wis. 2d 497, 504, 168 N. W. 2d 602.

determination upon factors not proper in or irrelevant to sentencing, or was influenced by motives inconsistent with impartiality. . . ." [20]

The defendants were found guilty by a jury of participating in a planned armed robbery of a factory employee credit union. Wright and Jones were each sentenced to fifteen years in prison. They went to prison for what they did, not for some small part of the record of their trial. It is true that the trial court stated to Jones that he had "read some of your legal documents." Jones explained, "I just get them from lawbooks, your honor." The court responded, "I wish you would get a job teaching law somewhere." Either this was high praise for the legal draftsmanship ability of Jones or it was a thinly veiled suggestion that he utilize his abilities in work other than holding up credit unions. If the first, the confidence in his competence may or may not have been misplaced. If the second, the suggestion for redeployment of energies was certainly proper. In either event, the colloquy falls short of "annoyance" and played no part in the sentencing. After all, co-defendant Wright, who received no judicial recognition of his document drafting abilities, got exactly the same sentence for being involved in exactly the same crime.

*By the Court.*—Judgments and orders affirmed.

---

[20] *Jung v. State* (1966), 32 Wis. 2d 541, 548, 145 N. W. 2d 684. *See also: Finger v. State* (1968), 40 Wis. 2d 103, 111, 161 N. W. 2d 272; *State v. Harling* (1969), 44 Wis. 2d 266, 280, 170 N. W. 2d 720.