STATE, Plaintiff in error, v. WUENSCH, Defendant in error.

*No. State 14. Argued June 4, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 665.)

---

[13] 40 USCA, sec. 270b.

468

For the plaintiff in error the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the defendant in error there was a brief by *Howard B. Eisenberg,* state public defender, and *Richard M. Sals,* assistant state public defender, and oral argument by *Mr. Sals.*

BEILFUSS, J.   The sole issue is whether the trial court abused its discretion in reducing the sentence.

The underlying facts are as follows: About midnight of August 20, 1973, the defendant in error, Thomas

Walter Wuensch, was playing pool with Richard J. Lyons at a bar in La Crosse. Wuensch, without provocation, hit Lyons on the head with a pool cue when Lyons refused to bet on a game of pool. The blow to Lyons' head caused a depressed skull fracture necessitating surgery and several weeks' hospitalization. Several bone fragments of Lyons' skull had to be removed, and as of October 16, 1973, the date of the preliminary hearing, he was still encountering difficulty in speaking and chewing and was facing the prospect of further surgery to implant a plastic plate over the hole in his skull.

The complaint and the information contained four counts: Aggravated battery, contrary to sec. 940.22, Stats.; injury by conduct regardless of life, contrary to sec. 940.23; endangering safety by conduct regardless of life, contrary to sec. 941.30; and attempted first-degree murder, contrary to secs. 939.32 and 940.01. The defendant originally pleaded not guilty to all four counts but subsequently, pursuant to a plea bargain, pleaded guilty to the charge of injury by conduct regardless of life, contrary to sec. 940.23. The state agreed to dismiss the other three counts but to read in, for sentencing purposes, two charges of operating a motor vehicle without the owner's consent, contrary to sec. 943.23, and one charge of auto theft, contrary to sec. 943.20. The read-ins grew out of incidents not related to the pool-cue episode. On November 2, 1973, the circuit court found the defendant guilty upon his plea and on November 26, 1973, sentenced him to a term not to exceed seven years. The Green Bay Reformatory was designated as the reception center.

At the sentencing hearing testimony was received from Dr. Edward Orman, a psychiatrist and medical director of the La Crosse County Guidance Clinic, who had known the defendant since 1970 and who had read clinic reports on him going back to 1967. Dr. Orman stated that the defendant was very aggressive and

dangerous when he had been drinking, and that all of his reported incidents, including beating his wife and all the crimes involved here, had occurred after the defendant had been drinking. When the defendant was sober, the doctor testified, he was not a threat and if he could be placed on probation and maintained on Antabuse, could be a good citizen.

Dr. Orman noted, however, that the defendant had been placed on an Antabuse program before but had been uncooperative, and that he had a tendency to return to drinking "when the pressure is off."

It was pointed out to the trial court that the defendant had three children and had recently been divorced from his wife.

After receiving the testimony the trial court stated:

"Well, Thomas, in looking over your record and the statements which have been made in Court today and the evidence, of course one thing has to be very obvious and that is when you are drinking you do become a danger to other people. You have had the opportunity of knowing that this does have this effect upon you and you have been told what you should do in order to avoid it. Unfortunately the warnings and admonitions have not taken hold on you and we now have a situation where we have a person whom you assaulted who very easily could have been killed and it would appear that there is some very serious condition but what he may not be permanently crippled in some respect as a result of the beating that was administered to him. We have these other charges which were read in and the Court feels it has the obligation to take that into account.

"Accordingly, Thomas Walter Wuensch, it is the judgment and determination of this Court that you be sentenced to the Wisconsin State Prisons with Green Bay designated as the Reception Center for an indeterminate term not to exceed seven years.

". . .

". . . in setting that sentence I take into account the seriousness of the offense and the matters which have been read in and the past history and the fact that he has

a tendency to become violent has been pointed out to him, and it has been pointed out to him that he must continue his Antabuse and that hasn't been done. There isn't any question in my mind that either incarceration or supervision for an extended period of time is necessary in this case. I realize that it is a long period of time. Now you have indicated that it is going to be wasted but the Court is hoping that it will not be wasted. Whether it is wasted or not to a certain extent will depend on Mr. Wuensch's attitude and how he adjusts and how he looks forward to this. He will have the opportunity, and I am not saying that it is a tremendous opportunity because the Court would never say that under these situations, but he will have the opportunity if he wishes to acquire some training so that he can better fit himself for a job when he is placed on parole or discharged from the institution, whatever the case may be. He will need some counseling and I am equally aware our State Institutions are not particularly overstaffed with counselors or psychiatrists but that is something that the Legislature has just plain ignored. They have not met the requests of the Department when they have asked for additional help, but on the other hand, I do not feel that this is a situation that can be handled locally."

On February 18, 1974, the defendant moved the trial court to review his sentence. The motion was granted and a hearing held on March 18, 1974.

The defendant, then twenty-five years old and a high school graduate, testified that one of the reasons he wanted a sentence reduction was so that he could be transferred from the Green Bay Reformatory to the Fox Lake medium security facility where he could take a welding course and enroll for credit at a technical school. He stated that he had been informed by corrections' officials that it was their policy not to allow a prisoner with a sentence longer than five years to be transferred to Fox Lake until he had served at least one year of his sentence.

The defendant also stated that he felt if he received a shorter sentence he would be paroled sooner, and said

that if he got a degree at Fox Lake, was placed on parole, got a job, and stayed sober for six months, there was a possibility that he could join his children and remarry his former wife.

The defendant's former wife testified that was a possibility, but that the longer he stayed away the less likely it became.

The trial court pointed out at the hearing that he had received a letter from a social worker with the department of health & social services who was familiar with the defendant's case. The letter stated that under his then-current sentence the defendant would be eligible for transfer to Fox Lake ten months after his reception date. The letter further stated:

"It should be pointed out further that our Assessment and Evaluation staff base their decision on placement on many factors, and a shorter sentence would not necessarily in itself imply transfer to a medium security institution.

"As a Social Worker in Tom's case, may I suggest that to date he has been displaying a very positive attitude and is seemingly trying to benefit from the programs that are offered."

The trial court reduced the original sentence of seven years to four years and six months from the original date of conviction.

An amended judgment was entered accordingly and the state seeks review by writ of error.

It is the state's position that no "new factors" within the meaning of *State v. Foellmi* (1973), 57 Wis. 2d 572, 205 N. W. 2d 144, were presented to the trial court so as to justify the sentence reduction. The defendant contends not only that such factors were present but that such factors are unnecessary where the trial court deems its original sentence to be unduly harsh.

The power of a trial court to modify a sentence after its execution has commenced and the term of court

expired was established in *Hayes v. State* (1970), 46 Wis. 2d 93, 101, 175 N. W. 2d 625, wherein the court recognized the "inherent power" of the trial court so to do. We stated at pages 105, 106:

"We are aware there are counter arguments to the modification of our present rule, *i.e.*, that the sentencing process must at some point come to an end and there are other ameliorative devices such as appellate review of sentencing or the pardoning power to provide relief. Within reasonable limits we think an unjust sentence should be corrected by the trial court. It is more important to be able to settle a matter right with a little uncertainty than to settle it wrong irrevocably. It should be kept in mind that under the indeterminate-sentence law the modification of a sentence in most cases can only affect a reduction of the maximum term of the sentence or the time the defendant can be kept under control of the state. The minimum term and eligibility to parole are determined by statute. The place of detention, amount of security, length of incarceration and parole are matters within the primary jurisdiction of the Department of Health & Social Services under its program of rehabilitating criminals."

The court in *Hayes* limited the time within which sentence reduction motions could be brought to ninety days from the date of the original sentence (no problem here) and held that the power of the trial court to amend its sentence was tempered by the limits of "sound sentencing discretion." It was also pointed out that the reasons for the modification should be stated. *Hayes, supra,* page 106.

This court held in *Hayes* that there was no abuse of discretion when the lower court reduced a maximum sentence from ten years to eight years when it discovered it had been misinformed as to the defendant's past criminal record.

In *Foellmi, supra,* this court specifically undertook to define the "reasonable limits" and "sound sentencing discretion" to which it had alluded in *Hayes,* and to

"fashion guidelines for the guidance of trial courts in the performance of their discretionary functions of reviewing and modifying sentences." *Foellmi, supra,* pages 580, 581.

The court specifically adopted the following portion of the American Bar Association's *Standards Relating to Sentencing Alternatives and Procedures,* sec. 6.1 (a) :

"**Authority to reduce: general.**
"(a) It may be appropriate to authorize the sentencing court to reduce or modify a sentence within a specified time after its imposition or the final resolution of an appeal if new factors bearing on the sentence are made known. . . ."

In elaboration, this court stated at page 582:

"It is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known. The commentary to the ABA Standards cite *District Attorney for the Northern District v. Superior Court* [(1961), 342 Mass. 119, 128, 172 N. E. 2d 245], which states:
" '. . . Occasions inevitably will occur where a conscientious judge, after reflection or upon receipt of new probation reports or other information, will feel that he has been too harsh or has failed to give due weight to mitigating factors which properly he should have taken into account. In such cases the interests of justice and sound judicial administration will be served by permitting the trial judge to reduce the sentence within a reasonable time.'
"We think the Massachusetts court goes too far. A trial court should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention."

Recently, in *Scott v. State* (1974), 64 Wis. 2d 54, 218 N. W. 2d 350, the *Foellmi* limitation was reaffirmed. In *Scott,* the trial court originally sentenced the defendant to not more than five years' imprisonment. On the

following day the trial court, on its own motion, increased the sentence to not more than seven and one-half years, explaining that it had simply made a mistake originally and had always intended the longer sentence.

This court noted that because the original sentence had not commenced at the time of modification, no constitutional problem was involved and elected to apply the same standard as it would in the case of a decrease in sentence. We then proceeded to apply the *Foellmi* prohibition against modifications of sentences based on "reflection," and quoted *Chandler v. United States* (5th Cir. 1972), 468 Fed. 2d 834, 836, for the following proposition:

" '. . . [T]he Government argues that an exception should be recognized in cases such as this where the alteration of the sentence was undertaken solely to conform to the original intention of the trial judge and the error in the original sentence was due solely to an inadvertent transposition of the numbers. Were we clairvoyant and able to say for certain in every case what the trial judge really "intended," this argument might be persuasive. Being mere mortals however, we must refrain from such delicate undertakings, and we refuse to sanction a procedure that encourages such an inquiry.' "

In conclusion we stated, at pages 59, 60:

"A review of the record in the instant case shows that the decision to increase the sentence was based solely on 'reflection.' Here the court amended the sentence so as to conform the sentence to its unspoken intent. This in our opinion does not constitute a new factor upon which a trial court may increase a defendant's sentence. In the absence of 'new factors,' the trial court's amended sentence of seven and one-half years must be reversed and the original sentence of five years reinstated."

In this case the following excerpts from the record made subsequent to the reception of testimony at the sentence modification hearing reveal quite clearly that the trial court's reduction was based on its "reflection" rather than on any "new factors:"

"*The Court:* Now what new factors are there, that the court didn't know at the time or take into account?

"*Mr. Flynn* [defendant's attorney]: The court is asking me to cross-examine the Judge—in effect did the court know that if the sentence exceeded five years that he would have to be restricted to that institution and would not be eligible for some benefits at a different institution?

"*The Court:* Now the Social Worker said in his letter: It should be pointed out that the Assessment and Evaluation Staff bases their decision on placement on many factors and shorter sentence would not necessarily in and of itself imply transfer to a medium security institution.

"*Mr. Flynn:* That's correct, but they told this to Mr. Wuensch and he so testified here under oath that when it exceeds five years he has to wait. Is the court aware of that rule? I wasn't.

"*The Court:* I didn't think there was any time set in terms of going to Fox Lake. My understanding is that Fox Lake is a medium security institution and that transfer there is dependent wholly upon what the inmate's attitude and behavior has been at Green Bay. In other words, is he that type of a risk and has his attitude been such that he should be at a medium security institution rather than at a maximum?

"*Mr. Flynn:* In this letter it goes on to state: As a Social Worker in Tom's case may I say that to date he has been displaying a very positive attitude and is seemingly trying to benefit from the programs that are offered.

"*The Court:* If that's in there I'm glad you did bring that out. I wasn't aware of that and I'm glad that's what Tom's attitude has been. Part of the reason for incarcerating him of course is that his attitude would be a more positive and better attitude. You will recall, Mr. Flynn, that at the time of sentencing one of the things that concerned me was that Tom knew what his tendencies were and particularly when he was drinking. He became violent and yet he made no effort, at least in the past, to basically curb that. Part of the reason for a lengthy incarceration was to impress upon him the need to realize that situation and that he would do something to remedy it, or to control it. . .

"The other problem of course that he'd had, if I recall and I don't have the pre-sentence here. . . . but my recollection is the court's comments which are in part of the transcript, were that he had on at least two episodes administered some rather severe beatings, one time to his wife and one time to this person, and the court was very concerned about the next time that we'd have a dead person on our hands as a result of these actions. I felt that Mr. Wuensch just had to plain be aware that this no longer could continue and he wasn't going to just get a pat on the wrist from the psychiatric people and then have him go out and kill somebody next time.

"*The Court:* Well Mr. Flynn when the courts send a man to Green Bay or Waupun, except in extremely rare circumstances, they go on the basis that the Reformatory personnel make the decisions from the point where the defendant is delivered to them, and from that point on where he goes and when is up to them. . . .

"Now, what concerns me with this particular case, and I'll tell you this, is not so much the change of circumstances as the court's original sentence. Usually when I've completed my sentencing I have usually felt in most cases 'that's it,' but this one has caused me some concern.

". . .

"Well, gentlemen, there has been some change in this defendant's attitude and I think that in my opinion he has made good progress. The court also feels at the time of initial sentencing that the sentence—now as I look at it in the reflection of a couple of months—was unduly harsh.

"I am going to reduce his sentence to four years and six months, from the original date of conviction."

The only "new factor" alluded to in the trial court's statement of its reasons for reduction is the change in the defendant's attitude and his "progress."

The state contends that "new factors" must be factors in existence at the time of the original sentencing but unknown to the court. The defendant accepts this proposition "for purposes of argument only" and relies on the department rule as to transfers to Fox Lake as satisfying

the "new factor" test. However, nowhere in the record did the trial court state that to be a reason for modification. The above excerpt reveals that the trial court considered that matter to be within the discretion of "the Reformatory personnel."

As to the defendant's change in attitude and progress or rehabilitation, favorable consideration for such factors lies solely within the province of the department of health & social services. As stated in *State ex rel. Warren v. County Court* (1972), 54 Wis. 2d 613, 620, 197 N. W. 2d 1, albeit in a quite different factual setting (the lower court, which had not sentenced the defendant, ordered his sentence reduced almost thirteen years after it had commenced) :

"Peter's possible rehabilitation is not a valid basis for reducing the sentences; that fact, if it is a fact, does not go to excessiveness of a sentence but to the question of parole. . . ."[1]

The defendant contends that no new factors are necessary to prevent an abuse of discretion when the trial court deems its original sentence unduly harsh. *Foellmi* and *Scott, supra,* require a contrary conclusion. Ironically, a situation may arise where the trial court is without authority to amend its original sentence, even if it so desires, while this court may be required to hold the sentence an abuse of discretion under *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512. This situation was recognized in *Foellmi* at pages 582, 583, where it was stated:

"Nothing said here varies the general rule that this court may review an allegedly excessive sentence or a sentence which is claimed to have been imposed in a manner indicating an abuse of discretion. However, in view of our statement 'It is inappropriate for a sentencing court to make a change in an imposed sentence

---

[1] *See also: State v. Dunn* (1971), 111 N. H. 320, 282 Atl. 2d 675.

unless new factors are made known,' the requirement that a motion be made to the trial court to correct a sentence deemed excessive or imposed with an abuse of discretion is unnecessary to preserve such question for review by this court unless new factors are, in fact, present which the trial court should consider as indicated herein."

However, in *Korpela v. State* (1974), 63 Wis. 2d 697, 702, 218 N. W. 2d 368, the language suggesting the by-pass of the lower court was specifically overruled and withdrawn and it was stated:

". . . Any motion for review of sentence, based either on claimed excessiveness or abuse of discretion or new factors being present, must be made to the trial court and, unless it is made at the trial court level, in the absence of compelling circumstances, will not be initially reviewed by this court. . . ."

As our case law now stands, a defendant desiring to challenge his sentence for any reason must bring a post-conviction or a postsentencing motion in the trial court before the expiration of ninety days or he cannot seek a review in this court as a matter of right, only as a matter of discretion. Upon this motion a trial court can alter a sentence imposed because of "new factors" or a legally void sentence.[2] The trial court cannot reduce or increase a sentence upon its reflection that the sentence imposed was harsh or inadequate. Nor can it originally impose a severe sentence for "shock treatment" intending at the time of imposing the sentence to reduce it after the defendant has spent some time in prison confinement with forceful recognition of his loss of liberty, personal re-straints and contemplation of the time to be served.

What appears to be wrong with these procedures is that in those cases where the defendant seeks a review of his sentence only upon the ground of abuse of discre-

---

[2] *State ex rel. Copas v. Burke* (1965), 28 Wis. 2d 188, 136 N. W. 2d 778.

tion, he must bring a motion in the trial court and the trial court is powerless to act except as stated above. True, he can obtain a review in this court, but why should the law require a meaningless motion in the trial court? Stated conversely, why shouldn't the trial court have the right to review a sentence it has imposed for a possible abuse of discretion?

As we have heretofore stated, there must be some finality to the imposition of sentence. The trial court cannot change the sentence upon mere reflection or indulge in "shock treatment." However, we perceive no valid reason why a trial court should not be permitted to review a sentence for abuse of discretion based upon its conclusion the sentence was unduly harsh or unconscionable. If the sentence is to be reduced upon these grounds, the trial court must set forth its reasons why it concludes the sentence originally imposed was unduly harsh or unconscionable.

In the case at hand, the record does not reflect the sentence was reduced upon "new factors" but merely upon "reflection." The amended judgment must therefore be reversed. While this court can review for an abuse of discretion, upon the record as we have it the seven-year sentence does not appear to be unduly harsh. However, we believe the matter should be remanded to the trial court for reconsideration. The trial court can reconsider whether the sentence originally imposed was unduly harsh or unconscionable, but if the sentence is to be reduced, adequate reasons must be set forth. Upon reconsideration or rehearing of the motion the trial court can, in its discretion, hear additional testimony or argument or both.

*By the Court.*—Judgment reversed and remanded for further proceedings not inconsistent with this opinion.