STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Gary L. KLUCK, Defendant-Appellant.

Supreme Court

*Nos. 95–2238–CR, 95–2239–CR, 95–2240–CR. Oral argument April 8, 1997.—Decided June 6, 1997.*

(Also reported in 563 N.W.2d 468.)

For the plaintiff-respondent-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Keith A. Findley,* assistant state public defender.

¶ 1.   WILLIAM A. BABLITCH, J.   The State of Wisconsin (State) seeks review of a court of appeals' decision which reversed an order denying Gary L. Kluck's (Kluck) motion to modify his 16 month county jail sentence. *State v. Kluck,* 200 Wis. 2d 837, 548 N.W.2d 97 (Ct. App. 1996). The issue is whether a defendant's four month period of sobriety while out on bail pending appeal of a misdemeanor conviction is a "new factor" authorizing the circuit court to modify the defendant's county jail sentence. We hold that it is not. Accordingly, we reverse.

¶ 2.   This case consists of three consolidated cases. The underlying facts, derived from the record, are as follows: On December 27, 1992, police were sent to the home of Kluck and his wife, Rose Kluck (Ms. Kluck) on a domestic battery call. When officers arrived at the Kluck home, Ms. Kluck and nine-year-old Patrick Kluck (Patrick) accused the defendant of flying into a drunken rage and hitting Patrick, causing him to fall and injure his neck. Ms. Kluck also accused Kluck of punching her in the face, pushing her into the

bedroom door, and trying to "smash" her. Patrick and eleven-year-old Gary Kluck, Jr. (Gary Jr.) confirmed their mother's statement. Consequently, Kluck was arrested and charged with two counts of disorderly conduct.

¶ 3.   On August 27, 1993, Marathon County Police were again called to Ms. Kluck's home. Kluck was free on bond pending trial for the December 27, 1992, disorderly conduct charges. One of the conditions of his bond was that he have no contact with Ms. Kluck. Nonetheless, when officers arrived at the home, Kluck was there. The officers spoke with Kluck's two young sons. Patrick complained that a very inebriated Kluck had shoved him and punched him in the right eye with a closed fist. In his statement to the police, Patrick explained:

> This isn't the first time my dad has punched me or pushed me around, he has done it quite a few times. Most of the time it is because he has been drinking.

Patrick told the officer that his mother tried to protect him. Gary Jr. confirmed Patrick's statement. When asked how he knew his father was drunk, Gary Jr. replied that his father had trouble keeping his balance, he slurred his speech, and he got the identities of the boys confused. Consequently, Kluck was arrested and charged with misdemeanor battery and bail violation.

¶ 4.   On January 11, 1994, while Kluck was still out on bond, and still under the bond condition that he have no contact with Ms. Kluck, a social worker for Marathon County observed Mr. and Mrs. Kluck together and contacted the district attorney's office. Consequently, Kluck was charged with misdemeanor bail violation.

4

¶ 5.  Kluck pled no contest and was convicted and sentenced on February 1, 1994, for all five of the above stated charges. The Circuit Court for Marathon County, Judge Michael W. Hoover, presiding, withheld sentence and imposed probation.

¶ 6.  On February 2, 1995, Kluck was arrested after the police were called to his home for a disturbing the peace complaint. On February 9, 1995, Kluck's probation agent issued a notice of probation violation recommending revocation of Kluck's probation for the following violations: consuming alcohol; failure to report to his probation agent; showing up at his AODA appointment intoxicated; failing to show up at his AODA appointment; and leaving Marathon County without his probation agent's approval. Kluck's probation was revoked.

¶ 7.  Sentencing after probation revocation occurred on February 23, 1995. At this sentencing, Judge Hoover observed that Kluck's unlawful actions were in large part the product of his alcoholism and his continued refusal to acknowledge his disease. After imposing an aggregate sentence of 16 months in county jail for the three convictions, the judge granted Kluck Huber privileges, but ordered him to serve the first three months of his sentence without Huber. Judge Hoover explained:

> [P]rimarily I think the driving force here is to give Mr. Kluck long enough not only to punish him in just measure for his conduct, but also long enough for him to have plenty of time to think about his situation and why he is in. . .that situation.

Kluck remained in jail until March 28, 1995, when the circuit court granted him bail pending appeal.

5

¶ 8.   On July 12, 1995, Kluck filed a post-conviction motion for sentence modification. Kluck claimed that upon his release from jail he began full-time work; attended his status conference before the court; and stopped drinking alcohol. He asked the circuit court to consider these changes as a "new factor" for purposes of sentence modification. Accordingly, he asked the court to reduce his jail sentence from 16 to 12 months.

¶ 9.   At the hearing on the post-conviction motion, the circuit court acknowledged that it was "very impressed by Mr. Kluck's apparent improvement." Nonetheless, the court denied Kluck's modification motion, concluding that a person's improvement after sentencing is not a legal basis upon which to modify a sentence. The court of appeals, concluding that "rehabilitation" is a new factor justifying a sentence modification, reversed and remanded for a new sentence modification hearing.

¶ 10.   This case presents one issue: whether a defendant's four month period of sobriety while out on bail pending appeal of his misdemeanor conviction is a "new factor" authorizing the circuit court to modify his county jail sentence.

¶ 11.   Whether a set of facts is a new factor is a question of law which this court reviews without deference to the circuit court. *State v. Franklin*, 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989).

¶ 12.   The issue presented involves the power of the circuit court to modify a valid sentence. It is well established that a circuit court has inherent power to modify a previously imposed sentence after the sentence has commenced. *State v. Wuensch*, 69 Wis. 2d 467, 472–73, 230 N.W.2d 665 (1975). However, the cir-

cuit court cannot modify a sentence on reflection alone or simply because it has thought the matter over and has second thoughts. *State v. Macemon*, 113 Wis. 2d 662, 668, 335 N.W.2d 402 (1983). The court must base its modification on a "new factor." *Id.*

¶ 13.   The term "new factor" refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.[1] *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). In applying the new factor test, this court has never expressly distinguished county jail sentences from prison sentences.

¶ 14.   In a series of cases involving prison sentences, courts of this state have repeatedly held that rehabilitation is not a "new factor" for purposes of sentence modification. *Jones (Hollis)*, 70 Wis. 2d at 72; *State v. Wuensch*, 69 Wis. 2d 467, 477, 230 N.W.2d 665 (1975). *See also State v. Ambrose*, 181 Wis. 2d 234, 510

---

[1] The "new factor" requirement originates from section 6.1 (a) of the American Bar Association's Standards Relating to Sentencing Alternatives and Procedures which provides as follows:

6.1   **Authority to reduce: general**.

(a)   It may be appropriate to authorized the sentencing court to reduce or modify a sentence within a specified time after its imposition or the final resolution of an appeal if new factors bearing on the sentence are made known. . . .(footnote omitted).

This court adopted section 6.1 in *State v. Foellmi*, 57 Wis. 2d 572, 581, 205 N.W.2d 144 (1973) *overruled on other grounds by Korpela v. State*, 63 Wis. 2d 697, 218 N.W.2d 368 (1974).

N.W.2d 758 (Ct. App. 1993); *State v. Kaster*, 148 Wis. 2d 789, 436 N.W.2d 891 (Ct. App. 1989); *State v. Prince*, 147 Wis. 2d 134, 432 N.W.2d 646 (Ct. App. 1988); *State v. Krueger*, 119 Wis. 2d 327, 351 N.W.2d 738 (Ct. App. 1984). In these cases, the court held that information concerning rehabilitation cannot be a new factor for sentence modification; it reasoned that consideration of such information is more properly considered by the parole system. *See, e.g., Jones (Hollis)*, 70 Wis. 2d at 72; *Wuensch*, 69 Wis. 2d at 478. Although defendants serving a county jail sentence are not within the purview of the parole system, when asked to find that post-sentencing rehabilitation is a "new factor" in the case of a defendant sentenced to county jail, this court did not do so. *State v. Johnston*, 184 Wis. 2d 794, 823, 518 N.W.2d 759 (1994).

¶ 15. Kluck argues that the rule that rehabilitation is not a new factor for sentence modification purposes should only apply to prison and not county jail sentences. He contends that a rule allowing circuit courts to modify county jail sentences based on post-sentencing conduct would create an incentive for defendants on bail to modify their behavior and make strides toward rehabilitation. He further argues that the present rule cannot logically extend to jail sentences, because jailed defendants have no recourse to the parole system, or anything equivalent to the parole system. We reject Kluck's arguments.

¶ 16. While encouraging rehabilitation is laudable, it is not the purpose of sentence modification. The purpose of sentence modification is to correct "unjust sentences." *Hayes v. State*, 46 Wis. 2d 93, 105, 175 N.W.2d 625 (1970). This court has flatly rejected the practice of using sentence modification as a method to

8

encourage rehabilitation. In *Wuensch*, the court renounced the practice of first imposing a long sentence in order to "shock" a defendant into rehabilitation and then, if this "shock treatment" creates the desired effect of rehabilitation, modifying the sentence. *Wuensch*, 69 Wis. 2d at 479. In this case, the circuit court imposed a long sentence to give Kluck "plenty of time to think about his situation." Perhaps this long sentence "shocked" Kluck into rehabilitation. But that is not relevant to sentence modification.

¶ 17. Kluck also argues that the present rule cannot logically extend to county jail sentences, because jailed defendants have no recourse to the parole system, or anything equivalent to the parole system. Kluck correctly states that defendants in county jail do not have recourse to the parole system. However, the judge who sentences a defendant to county jail does have the means to fashion a sentence that will take into account a defendant's successful rehabilitation.

¶ 18. One of these means is probation. If the circuit court orders probation at sentencing, it has the authority to modify the terms and conditions of probation at any time. Wis. Stat. § 973.09(3)(a) (1993–94). Probation modification provides the circuit court with a means of rewarding post-sentencing rehabilitation without modifying the sentence.

¶ 19. Huber privileges are another means by which the circuit court can recognize rehabilitative progress. These privileges allow persons sentenced to jail to leave the jail for several purposes, including employment and childcare. Wis. Stat. § 303.08 (1993–94). A defendant may petition the court for Huber privileges "at the time of sentence or thereafter." § 303.08(2).

¶ 20.  Jailed defendants with good post-sentencing conduct are also entitled to earn "good time"—a reduction of one-fourth of his or her sentence—for good behavior while serving the sentence. Wis. Stats. § 302.43 (1993–94). "Good time" is a means, built into the system by the legislature, for providing an incentive for good conduct to jailed defendants.

¶ 21.  In sum, the legislature has provided several means by which post-sentencing good conduct by defendants in county jail is recognized and rewarded.

¶ 22.  Finally, we note that it flies in the face of reason and logic to modify a sentence that is achieving its purpose. Kluck's alcoholism and his failure to recognize his drinking problem were both factors considered by the circuit court when it sentenced him. The 16 month sentence was selected by the court in part to encourage Kluck to recognize his alcoholism and quit drinking. Assuming that Kluck's post-sentencing sobriety indicates that he is making rehabilitative progress, the sentence is achieving its purpose. As the circuit court noted at the sentence modification hearing:

> The business of talking about Mr. Kluck's sobriety as a new factor is. . .simply pointing out rehabilitative progress, which is what the court attempted to achieve in imposing the sentence as originally structured. Mr. Kluck earned the sentence that he got based upon his past behavior, and the whole purpose of the sentence that was imposed was to hopefully bring him to the point of rehabilitation that he claims to have now have [sic] achieved.

¶ 23.  In sum, the legal system provides several means by which the rehabilitative behavior of jailed

10

defendants is recognized. Policy does not dictate modifying a sentence that is successfully achieving rehabilitation. Accordingly, we hold that a four month period of sobriety while out on bail pending appeal of a conviction is not a "new factor" authorizing the circuit court to modify the defendant's county jail sentence. We reverse.

¶ 24. *By the Court.*—The decision of the court of appeals is reversed.