SHIRLEY S. ABRAHAMSON, C.J.
¶ 100. {dissenting.) Wisconsin case law sets forth two separate doctrines governing a judicial change in a sentence: double jeopardy and reflection.[1]
¶ 101. The majority opinion addresses the defendant's constitutional double jeopardy argument and denies that it addresses the reflection doctrine.[2] The majority opinion admits that constitutional double jeopardy protection and the reflection doctrine both apply in "cases concerning a judicial change of a sentence."[3] Nevertheless, the majority opinion sometimes addresses the act of reflection but avoids the term and refers to reflection as the judge "deliberating," ¶¶ 41, 44, 48, or similar words. Paragraphs 42 and 43 of the majority opinion openly address the defendant's reflection arguments.
¶ 102. I examine the application of the reflection doctrine in the present case, in which the circuit court changed the terms of a sentence after the circuit court imposed a valid sentence.[4] I would vacate the second sentence and reinstate the original sentence.
*397 ¶ 103. I address the reflection doctrine because the reflection doctrine has been raised at every stage of the litigation; because this court typically decides cases on grounds other than constitutional grounds when it can;[5] because the reflection doctrine presents difficulties for litigants and the courts; and because the reflection doctrine is dispositive in the instant case.
¶ 104. By neglecting the reflection doctrine, the majority opinion ignores an important and, in the present case, dispositive issue and muddles the present law on the reflection doctrine. Because I conclude that the circuit court overstepped its limited authority under the existing reflection law to change the sentence it imposed, I dissent.
¶ 105. In response to my dissent, the concurrence acknowledges that the reflection doctrine is alive (but not well) in Wisconsin law and is germane to the present case. The concurrence "reflects" on the reflection doctrine "to provide support for the court's decision." Concurrence, ¶ 52.
¶ 106. The concurrence does not advocate discarding the reflection doctrine. Instead, the concurrence recasts the doctrine to distinguish between an "authentic mistake that may be corrected" (which the concurrence concludes happened in the instant case) and "a change of position based on reflection that requires a new factor as a prerequisite to modification." Concurrence, ¶ 84.
*398 ¶ 107. My discussion of the reflection doctrine is organized as follows:
I. The parties' positions on the recollection doctrine.
II. An examination of the reflection doctrine and its application to the present case.
III. The concurrence's position on the reflection doctrine.
IV The future prospects of the reflection doctrine.
I
¶ 108. The reflection doctrine has been presented to this court by both parties and the amicus.[6] The majority opinion asserts that the dissent is "creat[ing] and developing] arguments on a party's behalf."[7] Yet the parties addressed this issue time and again and the reflection issue was fully before this court.
¶ 109. Both parties addressed the issue of reflection in their briefs in this court. The defendant's brief notes that the increase in the defendant's sentence "was impermissibly based on the court's second guessing of its original sentence."[8] The State's brief defends against the charge of reflection, stating "the sentencing court in this case did not impermissibly modify the sentence 'upon reflection.' "[9]
¶ 110. The circuit court's order denying the defendant's post-conviction motion was appealed to the *399 court of appeals. Both the judgment of conviction and the post-conviction order are before this court for review. The post-conviction motion noted that the modified sentence "is neither permissible nor fair and constitutes double jeopardy and modification of the sentence without a new factor."[10]
¶ 111. Additionally, a nonparty (amicus) brief of the Wisconsin Association of Criminal Defense Lawyers discussed the "reflection" issue at length.
¶ 112. At oral argument, the issue of reflection emerged again. Defense counsel noted:
I don't believe that there's anything suggesting, or to meet that burden of proof in this record. I think there are only the comments of the judge on Day Two that make any suggestion of whether or not it was reflection. ... It does, I think, kind of sound like reassessing and reweighing some of the factors insofar as he misunderstood the nine-month sentence, but I don't believe that any evidence was introduced into the record at that point that would suggest it was not reflection.[11]
¶ 113. The State in its oral argument before this court stated: "[R]eflection is a factor that can be considered in addition to the [State v. Jones, 2002 WI App 208, 257 Wis. 2d 163, 650 N.W.2d 844, double jeopardy] factors. I think you can look what the sentencing, the record, you can look to the time it took for *400 the court to resentence, and you can look to whether the trial court impermissibly reflected."[12] The State continued: "[W]hat you can discuss is, you know, well, the State's argument is that there is no reflection. I do think this court should address that issue, because prior cases in the appellate courts have discussed in the double jeopardy context whether the trial court impermissibly reflected in imposing its sentence, resentence."[13] The State openly recognized that impermissible reflection would bar the circuit court's change in the sentence imposed in the present case.
¶ 114. The majority opinion erroneously asserts that no arguments regarding the reflection doctrine are before the court. Majority op., ¶¶ 49-50. The majority opinion declares that it "do[es] not cite or discuss . . . the numerous cases in our reflection doctrine jurisprudence . . . ." Majority op., ¶ 51. Nevertheless, the very cases the parties and the majority opinion discuss involved the reflection doctrine. See State v. Gruetzmacher, 2004 WI 55, ¶ 38, 271 Wis. 2d 585, 679 N.W.2d 533 (discussed at majority op., ¶¶ 33-40); State v. Burt, 2000 WI App 126, ¶¶ 14-15, 237 Wis. 2d 610, 614 N.W.2d 42 (discussed at majority op., ¶¶ 28, 35-39). By denying that it is addressing the reflection doctrine, the majority opinion contravenes our goals of finality and fundamental fairness, casts doubt on the continued vitality of the reflection doctrine, and undermines, if not overrules, numerous cases of long standing adopting the reflection doctrine.[14]
*401 II
¶ 115. I turn now to an explanation of the reflection doctrine and its application to the present case.
¶ 116. The reflection doctrine is one aspect of the law that a circuit court's inherent power to change a sentence is a "discretionary power that is exercised within defined parameters."[15] The doctrine prevents a circuit court from changing its imposed sentence "to conform the sentence to its unspoken intent."[16]
¶ 117. The reflection doctrine can be traced to State v. Foellmi, 57 Wis. 2d 572, 581-82, 205 N.W.2d 144 *402 (1973), which held that a sentencing court may reduce or modify a sentence after its imposition if new factors bearing on the sentence are made known, but a sentencing court should not reduce a sentence "on 'reflection' alone or simply because it has thought the matter over and has second thoughts." Foellmi, 57 Wis. 2d at 582.
¶ 118. The case law recognizes that a sentencing court may change a valid sentence that it has imposed for a variety of reasons other than reflection. It can, for example, change a valid sentence it has imposed because of a new factor,[17] or for erroneous exercise of discretion based upon its conclusion that the sentence was unduly harsh or unconscionable,[18] or because it is impossible to carry out the original sentence,[19] or to correct formal or clerical errors.[20]
¶ 119. In addition, a circuit court can change a valid, imposed sentence to comport with the circuit court's initial intention, when the circuit court's initial intention appears on the record of the original proceedings [21]
*403 ¶ 120. This court has carefully explained that evidence of the circuit court's original intention must be in the record of the original proceedings if a circuit court is to change a sentence to conform to its original intention. Such a rule enables an appellate court to avoid inquiring into the authenticity of a circuit court's assertion at a second sentencing proceeding of its intention at the original proceedings. As this court explained: "Were we clairvoyant and able to say for certain in every case what the trial judge really 'intended,' this [court might investigate the trial judge's intentions]. Being mere mortals however, we must refrain from such delicate undertakings, and we refuse to sanction a procedure that encourages such an inquiry."[22]
¶ 121. Along these lines, the majority opinion urges that "taking judges at their word is a fundamental assumption built into our legal system," and that in "the absence of clear evidence to the contrary, we decline to assign improper motive on the part of the circuit court." Majority op., ¶ 48. The reflection doctrine accomplishes exactly the goal the majority opinion espouses.
¶ 122. Under the reflection doctrine, an appellate court does not gauge whether a circuit court's explanation at resentencing is an accurate statement of the circuit court's original intention.
¶ 123. The paradigmatic application of the reflection doctrine and the requirement of contemporaneous evidence in the record to support the circuit court's original intention is found in Scott v. State, 64 Wis. 2d 54, 60, 218 N.W.2d 350 (1974), one of the seminal reflection cases.[23]
*404 ¶ 124. In Scott, two defendants were charged with armed robbery. The first defendant, Calvin Scott, was sentenced to up to five years in prison. The second defendant, James Porter, was sentenced to up to ten years in prison. Scott, however, was already serving a five-year prison sentence for another crime. Thus, defendant Scott was sentenced to a total of ten years of prison for two crimes while defendant Porter was sentenced to ten years but for only one crime.
¶ 125. The sentencing court realized this difference in the two sentences while driving home after sentencing the defendants. The next day, the sentencing court ordered defendant Scott back to court to be resentenced. At the hearing to change the sentence, the circuit court explaining that it did not intend to have one defendant serve ten years for a single crime and have another serve ten years for two crimes; such a result, said the circuit court at resentencing, "was not fair to the community." Scott, 64 Wis. 2d at 58.
¶ 126. In Scott, the supreme court reinstated the original sentence, concluding that when a sentencing court unintentionally erred in imposing a sentence, an appellate court would not engage in the delicate inquiry of examining the original intention of the sentencing court. Rather, the Scott court concluded that because the sentencing court's decision to increase the sentence attempted to conform the sentence to its unspoken intention, the increase in the sentence was based on reflection and was prohibited.
¶ 127. The Scott court explained:
A review of the record in the instant case shows that the decision to increase the sentence was based solely on "reflection." Here the court amended the sentence so as to conform the sentence to its unspoken intent.. ..
*405 [T]he trial court's amended sentence . .. must be reversed and the original sentence ... re-instated.
Scott, 64 Wis. 2d at 59-60.
¶ 128. Numerous cases have reiterated and applied the Scott holding: A court cannot change a sentence to conform to its original intention, unless the record demonstrates that original intention.[24]
¶ 129. When the record demonstrates that a changed sentence conforms to the circuit court's original intention, no impermissible reflection has occurred. For example, in State v. Burt, 2000 WI App 126, 237 Wis. 2d 610, 614 N.W.2d 42, the circuit court's notes from the first sentencing proceeding demonstrated the original intention for the duration of the sentence and that the circuit court judge had a "slip of the tongue"[25]— that is, that the circuit court meant to say one word at the original sentencing proceeding and said another word instead. The change in the sentence was therefore upheld under the Scott test. Burt, 237 Wis. 2d 610, ¶ 15.
¶ 130. By contrast, the record in the instant case fails to demonstrate that the court's initial intention was the longer sentence. Indeed, the circuit court in the present case apparently acknowledged that its original intention was not in the record, explaining that it was changing the sentence to conform the sentence to its unspoken intention that a longer sentence be imposed:
Yesterday afternoon we had a sentencing hearing involving [the defendant]. At the conclusion of the hear *406 ing and subsequent thereto the [circuit court] did some research and I realized I made a mistake. The split sentence I proposed yesterday did not reflect this Court's intent as far as a fair sentence in this case.
¶ 131. The circuit court in the present case changed the initial sentence when, after thinking the sentence over and doing some research, it decided that the original sentence did not conform with its unspoken, unstated intention. The circuit court stated it came to realize that the sentence imposed was not harsh enough.
¶ 132. Put differently, the circuit court in the present case came to the conclusion that the original sentence would have to be increased in order to meet its intended but unstated sentencing goals.[26] That reasoning is exactly the kind of reasoning prohibited by the reflection doctrine.
Ill
¶ 133. The concurrence critiques three aspects of the reflection doctrine:
(A) The initial reflection cases relied on cases with different facts. Concurrence, ¶¶ 60-74.
(B) Double jeopardy "make[s] the Scott case outmoded with respect to quickly-addressed judicial mistakes.' Concurrence, ¶ 79.
(C) The concurrence changes the reflection doctrine to rely on what the concurrence characterizes as psychoanalysis and mind-reading to determine a circuit court's unspoken intention. Concurrence, ¶ 98.
*407 A
¶ 134. With respect to the concurrence's first critique, the Scott court explicitly stated that it was adopting the reflection doctrine by relying on the rationale of past cases with different fact scenarios.[27] The Scott court knew what it was doing. Regardless of the concurrence's hindsight view of the persuasiveness of the seminal cases, see concurrence, ¶¶ 66-70, or its analysis of the motivations and positions of individual justices, the concurrence recognizes that the holdings of Scott and Foellmi are good law in Wisconsin: A circuit court is barred from "amending] the sentence so as to conform the sentence to its unspoken intent." Scott, 64 Wis. 2d at 59-60.
B
¶ 135. With respect to the concurrence's double jeopardy argument, nowhere in our case law has it been suggested that the application of double jeopardy principles abrogates the need for the reflection doctrine. Indeed, the concurrence implicitly concedes that even if the double jeopardy case of United States v. DiFrancesco, 449 U.S. 117, 133-37 (1980), limits the application of the reflection doctrine, the reflection doctrine retains importance whenever a circuit court changes a valid, imposed sentence. Concurrence, ¶ 84.
¶ ‘ 136. The concurrence cites Burt, 237 Wis. 2d 610, ¶¶ 12-15, to show the limits of the reflection doctrine,[28] but Burt demonstrates that courts analyze *408 both the double jeopardy and reflection doctrines and apply each test independently.
C
¶ 137. With respect to the concurrence's application of the reflection doctrine to the present case, the concurrence modifies the reflection test to uphold the circuit court's sentence in the instant case as follows: A sentence changed because of an "authentic judicial mistake in sentencing" is permissible, even though the record of the initial proceedings does not demonstrate the circuit court's original intention. Concurrence, ¶ 84.
¶ 138. The concurrence justifies its modified reflection test to eliminate the record requirement, but at the same time seeks to avoid the use of psychoanalysis and mind-reading to "dispute the authenticity of. . . statements the court made about its intentions . . . ." Concurrence, ¶ 95.
¶ 139. Yet the concurrence's modification of the reflection doctrine forces an appellate court in the trap of psychoanalyzing and reading the mind of the circuit court.
¶ 140. The concurrence has constructed a long, involved narrative engaging in mind-reading to determine the circuit court's original intention in the present case and to conclude that the circuit court made an authentic judicial mistake.
¶ 141. According to the concurrence, "the [circuit] court seemingly misunderstood the effect of the sentences it imposed," concurrence, ¶ 94; was in "confusion" during the original sentencing proceeding, concurrence, ¶¶ 96, 97; and had "a hard time wrapping [its] head around" which sentences were concurrent and which were consecutive. Concurrence, ¶ 97.
*409 ¶ 142. Despite the circuit court's hearing and correctly repeating the defendant's various sentences at the original sentencing proceeding, concurrence, ¶ 94, the concurrence gamely attempts to read the circuit court's mind to find evidence of confusion at the original sentencing hearing regarding what the circuit court "thought it was imposing." Concurrence, ¶ 94.
¶ 143. This is exactly the type of psychoanalysis that the concurrence expressly claims to avoid. Concurrence, ¶ 98. The concurrence puts appellate courts in the position of having to assess whether a circuit court's post-sentencing assertion of a mistake at the original sentencing is "authentic" or not.
¶ 144. In contrast, the existing reflection doctrine allows an appellate court to avoid psychoanalyzing the authenticity of the circuit court's assertion at a second sentencing of a mistake at the original sentencing by requiring that the change in the sentence conform with the circuit court's original intention as expressed in the record of the original proceedings.
¶ 145. As the court noted in Scott, appellate courts are not mind-readers and must rely on the record to assess the circuit court's original intention.[29] The record must contain clear and convincing evidence that the reason for the change in the sentence is not mere reflection. In Burt, the circuit court's contemporaneous sealed notes demonstrated the court's original intention.[30] In the present case, as in Scott, the sentencing court based the change of the sentence on its unspoken intention at the original sentencing proceedings and fails to pass the reflection test.[31]
*410 ¶ 146. Consequently, I conclude that the circuit court erred in the present case in changing the sentence.
IV
¶ 147. Many states impose far stricter limitations on trial courts' sentence changes than Wisconsin. These states do not need or have a reflection doctrine to limit a trial court's authority to change a sentence.[32]
¶ 148. This court has grappled with the circumstances under which a circuit court may change a valid sentence after it is imposed. The appellate courts have decided numerous cases involving sentence changes.[33] The legislature has also addressed this issue in crafting statutes regarding sentence changes.[34]
*411 ¶ 149. If the court wishes to overrule or modify the reflection doctrine, it should do so, rather than create a confusing and contradictory outcome as it does in the present case.
¶ 150. The court might conclude that the reflection doctrine is not good policy, or that it is too difficult to apply, and that the doctrine should be abandoned.
¶ 151. Or the court could create a bright-line rule, holding that a circuit court, on its own motion or on motion of a party, may change a valid, imposed sentence within a fixed amount of time after the imposition — say, 48 hours.[35]
¶ 152. If, however, the court is overruling or altering the numerous cases adopting and applying the reflection doctrine, it should state its intention. In *412 stead, the majority opinion muddles the existing doctrine, while claiming not to address it.
¶ 153. For the reasons set forth, I dissent. I would hold that the record of the proceedings in the present case does not demonstrate that the circuit court increased the imposed sentence to conform to the circuit court's original intention. Rather, the record shows the circuit court reflected on the sentence initially imposed: it checked records; it did research; and it changed the sentence because it concluded that the sentence it imposed was not the one it intended to impose or should have imposed.
¶ 154. Indeed the concurrence in effect concedes that the record is not sufficient to permit a sentence change under existing law and must modify the reflection doctrine to uphold the changed sentence in the present case.
¶ 155. Adhering to the current law on reflection, I would vacate the second sentence and reinstate the original sentence.
¶ 156. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 See, e.g., Scott v. State, 64 Wis. 2d 54, 58, 218 N.W.2d 350 (1974) (overturning a change in a sentence on reflection grounds even when "(jleopardy in a constitutional sense has not yet attached").

 See majority op., ¶ 50 ("We do not cite or discuss . . . the numerous cases in our reflection doctrine jurisprudence . . . .").

 Majority op., ¶ 49.

 The case law variously refers to such a change in an original valid sentence interchangeably as "amending the sentence," Scott, 64 Wis. 2d at 57; "resentencing," State v. Foellmi, 57 Wis. 2d 572, 581, 205 N.W.2d 144 (1973); "a change in an imposed sentence," Foellmi, 57 Wis. 2d at 582; "sentence modification," State v. Hedgwood, 113 Wis. 2d 544, 546, 335 N.W.2d 399 (1983); a "sentence increase," Scott, 64 Wis. 2d at 59; *397 "sentence reduction," State v. Wuensch, 69 Wis. 2d 467, 472, 230 N.W.2d 665 (1975); or a "sentence change," Wuensch, 69 Wis. 2d at 480. I use the word "change" to include all these terms. The majority opinion similarly refers to "a judicial change of a sentence." Majority op., ¶ 49.

 See, e.g., Adams Outdoor Advertising, Ltd. v. City of Madison, 2006 WI 104, ¶ 91, 294 Wis. 2d 441, 717 N.W.2d 803.

 The parties spent most of oral argument and their briefs discussing the double jeopardy issue. The short unpublished per curiam opinion of the court of appeals addressed only the double jeopardy issue.

 Majority op., ¶ 50 (quoting State v. Brown, No. 2011AP2907-CR, unpublished order (Feb. 26,2014) (Bradley, J., dissenting)).

 Brief of Defendant-Appellant-Petitioner at 6.

 Brief of Plaintiff-Respondent at 16.

 State v. Robinson, Case No. 11-CF-288, Post-conviction Motion To Restore Original Sentence (Milwaukee Cnty. Cir. Ct., Nov. 14, 2011).

 Oral arg. at 24:48-25:28, available at http://www. wicourts.gov/supreme/scoa.jsp?docket_number=2011ap2833& begin_ date=&end_date=&party_name=&sortBy=date (last visited June 2, 2014) (emphasis added). See the defendant's reflection argument, discussed at ¶¶ 40-41 of the majority opinion.

 Oral arg. at 1:00:24-1:00:44.

 Oral arg. at 1:01:40-1:01:56.

 In addition to the cases cited herein, a long line of cases addresses the question of when it is appropriate for a circuit court to change a valid sentence it has imposed.
*401 See State v. Macemon, 113 Wis. 2d 662, 668, 335 N.W.2d 402 (1983) ("The rule in Wisconsin is that it is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known. 'A trial court should not reduce a sentence on "reflection" alone or simply because it has thought the matter over and has second thoughts. It must base its modification on "new factors" brought to its attention.' State v. Foellmi, 57 Wis. 2d 572, 582, 205 N.W.2d 144 (1973)."); State v. Martin, 121 Wis. 2d 670, 674 n.1, 360 N.W.2d 43 (1985) ("A trial court is not free to modify a sentence solely on reconsideration and reflection and a deliberate change of mind. See Scott v. State, 64 Wis. 2d 54, 58-60, 218 N.W.2d 350 (1974)."); State v. Perry, 136 Wis. 2d 92, 113, 401 N.W.2d 748 (1987) ("In Scott, the court made clear that a court should not increase a sentence on ' "reflection" alone.' [Scott, 64 Wis. 2d ] at 59, 218 N.W.2d 350."); State v. Grindemann, 2002 WI App 106, ¶ 21, 255 Wis. 2d 632, 648 N.W.2d 507 (overturning a circuit court's change in a sentence because "it may not reduce a sentence merely upon 'reflection' or second thoughts. [Wuensch, 69 Wis. 2d at] 480; Scott v. State, 64 Wis. 2d 54, 59, 218 N.W.2d 350 (1974)").

 State v. Ninham, 2011 WI 33, ¶ 88, 333 Wis. 2d 335, 797 N.W.2d 451 (citing State v. Crochiere, 2004 WI 78, ¶ 12, 273 Wis. 2d 57, 681 N.W.2d 524) (emphasis added)).

 Scott, 64 Wis. 2d at 60. See also State v. Crochiere, 2004 WI 78, ¶ 12, 273 Wis. 2d 57, 681 N.W.2d 524.
Whether a circuit court has changed a sentence it has imposed on reflection is a question of law for this court.
*402 For a discussion of sentence modification and the reflection doctrine, see Jeffrey Kassel, Comment, Sentence Modification by Wisconsin Trial Courts, 1985 Wis. L. Rev. 195, 200-03.

 See Rosado v. State, 70 Wis. 2d 280, 234 N.W.2d 69 (1975).

 Wuensch, 69 Wis. 2d at 478-80 ("The trial court cannot change the sentence upon mere reflection or indulge in 'shock treatment.' However, we perceive no valid reason why a trial court should not be permitted to review a sentence for abuse of discretion based upon its conclusion the sentence was unduly harsh or unconscionable."); see also State v. Harbor, 2011 WI 28, ¶ 35 n.8, 333 Wis. 2d 53, 797 N.W.2d 828 (citing Wuensch for the same proposition).

 State v. Sepulveda, 119 Wis. 2d 546, 555-56, 350 N.W.2d 96 (1984)

 Hayes v. State, 46 Wis. 2d 93, 101-01, 175 N.W.2d 625 (1970) (overruled in part by State v. Taylor, 60 Wis. 2d 506, 210 N.W.2d 873 (1973)).

 Scott, 64 Wis. 2d at 59-60.

 Id. at 59 (citations and quotations omitted).

 Scott was not a double jeopardy case. Scott, 64 Wis. 2d at 58.

 See, e.g., Harbor, 333 Wis. 2d 53, ¶ 35; State v. Kluck, 210 Wis. 2d 1, 6-7, 563 N.W.2d 468 (1997); Wuensch, 69 Wis. 2d at 480.

 State v. Burt, 2000 WI App 126, ¶ 12, 237 Wis. 2d 610, 614 N.W.2d 42.

 See Burt, 237 Wis. 2d 610, ¶ 15.

 Scott, 64 Wis. 2d at 58-59 (citing State v. Leonard, 39 Wis. 2d 461, 473, 159 N.W.2d 577 (1968); Denny v. State, 47 Wis. 2d 541, 544, 178 N.W.2d 38 (1970); Foellmi, 57 Wis. 2d at 582).

 Concurrence, ¶¶ 88-91.

 Scott, 64 Wis. 2d at 59-60. See ¶ 120, supra.

 Burt, 237 Wis. 2d at 610, ¶ 4.

 Scott, 64 Wis. 2d at 59 (vacating a defendant's new sentence and reinstating the original sentence when the only *410 evidence of the circuit court's original intention came from the court's own statement at the resentencing hearing).

 At the time the reflection doctrine was adopted, Wisconsin was the only state that permitted circuit courts to modify a sentence after the sentence had begun or the term had ended. See Kassel, supra note 16, at 200-03. Attorney Kassel notes:
Prior to 1970, Wisconsin followed the common-law majority rule that the power of the trial court to modify its judgment or sentence ceases when the sentence has begun or the term of the court has expired. This long-standing limitation on the power of the trial court was rejected by the Wisconsin Supreme Court in Hayes v. State [46 Wis. 2d 93, 175 N.W.2d 625 (1970)].
Id. at 200.
The general rule in other states more strictly prevents trial courts from changing a sentence. See Lee R. Russ, Power of State Court, During Same Term, To Increase Severity of Lawful Sentence — Modern Status, 26 A.L.R. 4th 905, §§ 3, 8 (1983 & Supp. 2013).

 See Harbor, 333 Wis. 2d 53, ¶¶ 35-51 (analyzing our court's history of "new factor" analysis).

 See Hayes, 46 Wis. 2d at 106 (holding that the new criminal code mandated a 90-day window for sentence changes).

 In areas of imprecise durational requirements, courts occasionally set bright-line time limits in the interests of certainty. The United States Supreme Court recently confronted the issue in Maryland v. Shatzer, 559 U.S. 98, 130 S. Ct. 1213 (2010), when dealing with the time limit after an invocation of counsel that police can recommence interrogation:
It is impractical to leave the answer to that question for clarification in future case-by-case adjudication; law enforcement officers need to know, with certainty and beforehand, when renewed interrogation is lawful. And while it is certainly unusual for this Court to set forth precise time limits governing police action, it is not unheard-of. In County of Riverside v. McLaughlin, 500 U.S. 44, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991), we specified 48 hours as the time within which the police must comply with the requirement of Gerstein v. Pugh, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), that a person arrested without a warrant be brought before a magistrate to establish probable cause for continued detention.
Shatzer, 559 U.S. at 110. The Court in Shatzer settled on a 14-day time period, after weighing and balancing various factors.